Edward **OSKIERKO**, Plaintiff,

v.

**SOUTHWESTERN HORIZONS, INC.**, an Arizona corporation, et al., Defendants.

No. 73 C 913.

United States District Court, N. D. Illinois, E. D.

Sept. 14, 1973.

Ronald S. Bailis and Merrill C. Hoyt of Bailis & Hoyt, Chicago, Ill., for plaintiff.

Frederic S. Lane and Harold C. Hirshman of Sonnenschein, Levinson, Carlin, Nath & Rosenthal, Chicago, Ill., for defendants Media Horizons, Inc., Southwestern Horizons, Inc., and R. C. Crisler & Co.

## MEMORANDUM OPINION

MAROVITZ, District Judge.

### Motion to Dismiss for Want of an Indispensable Party and Other Related Matters

This is an action by plaintiff, Edward Oskierko, to require defendants Southwestern Horizons, Inc., and its parent corporation, Media Horizons, Inc., sellers of radio stations KMEO–AM and FM, to specifically perform their contract to sell the assets of these stations to him and to pay money damages for breach of their contract (Count I); to require payment of money damages by the sellers for interfering with plaintiff's contract with Raymond and Frank Peterlin for partial financing of the purchase of the radio stations (Count II); and to require defendant R. C. Crisler & Co., Inc., the escrow agent, to return or redeposit earnest money released by Crisler to the sellers in breach of their escrow agreement (Count III).

Plaintiff, an Illinois citizen, sues in Federal District Court on the jurisdictional grounds of diversity of citizenship between himself and defendants Southwestern Horizons, Inc., an Arizona corporation, Media Horizons, Inc., a New York corporation, and R. C. Crisler & Co., Inc., an Ohio corporation with an office in Tucson, Arizona. Jurisdiction is predicated on diversity of citizenship under 28 U.S.C. § 1332. Plaintiff, however, is also President and owner of 49% of the stock of KMEO, Inc., an Arizona corporation, which is not a party to this suit. Defendants contend KMEO, Inc., is an indispensable party without which equitable adjudication cannot be rendered, and thus move for dismissal. In addition, each defendant moves to dismiss the complaint for lack of jurisdiction over the person; Southwestern Horizons, Inc., and R. C. Crisler & Co., Inc., move, in the alternative, to transfer the action to the United States District Court for the District of Arizona. Before decision on these motions can be rendered, however, a statement of the pertinent facts is necessary.

Plaintiff, on November 11, 1971, signed in his own capacity an agreement to purchase the assets of KMEO–AM and FM from defendant-seller Southwestern Horizons, Inc., for $400,000. By ¶ 25 of that agreement plaintiff was required to form an Arizona corporation to which he would assign the obligations of his part of the contract. Plaintiff formed KMEO, Inc., an Arizona corporation, on November 16, 1971, and assigned his obligations and the $40,000 he personally put in escrow, pursuant to the September 20, 1971, Memorandum of Terms and the November 11, 1971

agreement to KMEO, Inc., for 105,700 shares (49%) of common stock. In order to secure the balance of funds necessary to complete the purchase, plaintiff concluded a stock subscription with Raymond and Frank Peterlin for 110,000 shares (51%) of common stock at $1.00 par value per share conditioned upon FCC approval of the acquisition by KMEO, Inc., of the assets of Southwestern Horizons, Inc., including the station license in Phoenix, Arizona. The Peterlins agreed to pay $110,000 upon call by the corporation and, in addition, agreed to loan KMEO, Inc., up to $300,000 on or before the closing date of the purchase and sale. KMEO, Inc., applied to the FCC for approval of the license assignment on December 27, 1971, and received it on March 8, 1972. On April 20, 1972, the agreed date of closing, KMEO, Inc., refused to perform, alleging breach by the sellers for non-compliance with the Federal Communications Act. Richard Oskierko, the secretary of KMEO, Inc., and the grandson of Edward Oskierko, telegrammed the FCC of such non-compliance on April 21, 1972. He also telegrammed the escrow agent Crisler on April 22, 1972, not to release the funds held by them. Crisler, however, released the $40,000 held in escrow to the sellers on April 24, 1972, as liquidated damages.

Plaintiff now sues in his own right as the sole plaintiff to redress wrongs arising out of the alleged breach of the agreement to sell by Southwestern Horizons, Inc., a wholly-owned subsidiary of Media Horizons, Inc., and of the escrow agreement by Crisler. The underlying issue that must be determined before questions of liability can be decided is whether Edward Oskierko can bring such an action and if so, whether the corporation KMEO, Inc., must be joined in order for the court to grant an equitable result. In order to reach this issue we must look into the events leading up to the alleged breach.

■ Edward Oskierko signed the November 11, 1971, agreement as purchaser. On November 16, 1971, KMEO, Inc., was incorporated and became by assignment the obligor to purchase KMEO–AM and FM from Southwestern Horizons. When he assigned his interest to KMEO, Inc., Edward Oskierko became the President and sole shareholder of KMEO, Inc., with 49% of the stock. On December 20, 1971, Raymond and Frank Peterlin promised by subscription to buy the remaining 51% of KMEO, Inc., stock when the FCC granted approval of the acquisition of the assets of Southwestern Horizons, Inc. Such approval was received on March 8, 1972. At that point in time Edward Oskierko was no longer solely in control of KMEO, Inc., since the condition precedent to the Peterlins' subscription agreement had been fulfilled. The financing agreement specifies that the subscription contract is subject only to F.C.C. *approval* of the acquisition, and not the actual acquisition itself. Therefore, the failure to close the deal on April 20, 1972, did not affect the Peterlins' rights or liabilities. A subscription upon a condition precedent becomes absolute as soon as the condition is substantially performed, without any further act or consent upon the part either of the corporation or the subscriber, both for the purpose of rendering subscriber liable on the subscription, and for the purpose of constituting him a stockholder, with all the rights of a stockholder, such as the right to vote at corporation meetings, the right to receive dividends, and the like. Hoppe v. Rittenhouse, 279 F.2d 3 (9th Cir. 1960); Wear v. Jacksonville, 24 Ill. 593 (1860); 4 Fletcher, Cyclopedia of Corporations § 1520. The Peterlins had the rights of 51% stockholders on March 8, 1972; it is not relevant that the corporation had not yet called for payment, nor that no certificates had been delivered at that time. Hoppe v. Rittenhouse, supra. However, on some date unspecified in

the record, but before the closing date, the Peterlins were called upon to make payment as per the agreement, but due to alleged interference by the defendants the Peterlins breached this agreement. The effect of this non-payment is unclear. Neither the Peterlins, nor the issue of their rights in KMEO, Inc., is before this court.

Defendants argue that as of November 16, 1971, when KMEO, Inc., was formed, Edward Oskierko became a mere shareholder having nothing whatsoever to do with the transaction; that it was KMEO, Inc., who filed application with the F.C.C.; and that KMEO, Inc., was assigned all the obligations in the contract, leaving assignor Oskierko no interest in maintaining a lawsuit. However, if Edward Oskierko is the sole shareholder of KMEO, Inc., a corporation established merely to facilitate the financing, purchase and operation of the two radio stations, then defendants' argument glosses over the need to examine disregarding the corporate identity, for the unity of interest and ownership might be such as to extinguish the separate personalities of the corporation and its owner insofar as the legal rights and obligations of Oskierko and KMEO, Inc., are concerned.

If the Peterlins do have an interest in KMEO, Inc., Edward Oskierko clearly cannot represent the corporation merely by appearing in his individual capacity. If Oskierko is suing derivatively as an officer of the corporation to enforce the corporation's contracts and escrow agreement, then the corporation is clearly indispensable. *See,* e. g. Ross v. Bernhard, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1969), In re Penn Central Securities Litigation, 335 F.Supp. 1026 (E.D.Penn.1971). If this suit is not intended to be a derivative suit, the joinder of KMEO would still necessarily be required because (1) by assignment, it is the sole purchaser bound by the agreement of November 11, 1971, (2) it is the only obligor for the purchase price of the agreement, and (3) it is the only party granted approval by the F.C. C. to be the assignee of the two radio stations licenses.

To reiterate, neither the Peterlins nor the issue of their rights in KMEO, Inc., is before the court. The court finds not that Raymond and Frank Peterlin are indispensable parties to this lawsuit, but that their absence makes KMEO, Inc., an indispensable party; the court cannot be assured complete relief will be granted, or a multiplicity of lawsuits avoided, unless it could fashion a decree to bind KMEO, Inc. This it cannot do because KMEO might not be under the control of Edward Oskierko. Rule 19(b) of the Federal Rules of Civil Procedure require a consideration of several factors before making a determination of indispensability. The court finds that it cannot render an adequate judgment in KMEO's absence for reasons already explained, and that the plaintiff will not be deprived of an adequate remedy if certain counts are dismissed for nonjoinder. Since KMEO, Inc., is an Arizona corporation and defendant Southwestern Horizons, Inc., is also an Arizona corporation, diversity of citizenship is destroyed in Count I and in Count II.

■■ With regard to Count III, the court perceives a jurisdictional problem in the complaint not mentioned by parties on either side, but which the court is inquiring into *sua sponte.* Shahmoon Industries, Inc. v. Imperato, 338 F.2d 449 (3d Cir. 1964). Title 28 U.S.C. § 1332(c) provides that a corporation shall be deemed a citizen of the state in which it is incorporated and in which it has its principal place of business. The court has not read this jurisdictional prerequisite in the disjunctive, but rather, has required complaints to include allegations of both the place of incorporation

and the principal place of business of the corporate parties. Guerrino v. Ohio Casualty Insurance Co., 423 F.2d 419 (3d Cir. 1970). The complaint here lacks any allegation as to where defendant Crisler maintains its principal place of business. The language employed in ¶ 4, "That R. C. Crisler & Co., Inc., is a corporation licensed to do business under the laws of the State of Ohio and as such has been doing business during all the matters complained of in this suit," is inadequate as a declaration of corporate citizenship. Bank of California National Association v. Twin Harbors Lumber Co., 465 F.2d 489 (9th Cir. 1972); Moore v. Sylvania Electric Products, 454 F.2d 81 (3d Cir. 1972). This is particularly serious in this situation since Crisler and Co., Inc., have an office in Tucson, Arizona, and if Arizona is the state of its principal place of business, diversity of citizenship is destroyed.

■ Under Federal Rules of Civil Procedure Rule 15(a), 28 U.S.C.A., a party may amend his pleadings once as a matter of course at any time before a responsive pleading is served. A motion to dismiss is not a responsive pleading under this rule, Fuhrer v. Fuhrer, 292 F.2d 140 (7th Cir. 1961), hence plaintiff still has this prerogative. In light of the foregoing, no motions with respect to R. C. Crisler & Co., Inc., need now be decided.

In summary, the action is dismissed as against Southwestern Horizons, Inc., and Media Horizons, Inc., under Federal Rules of Civil Procedure Rule 12(b)(7), 28 U.S.C.A., and plaintiff Oskierko may amend within ten days its pleadings with regard to the citizenship of R. C. Crisler and Co., Inc., as permitted under Federal Rules of Civil Procedure Rule 15(a), 28 U.S.C.A.