**Barbara BURNS d/b/a Barbie's Plaster & Gifts, Plaintiff,**

v.

**ROCKWOOD DISTRIBUTING COMPANY, White Art Studios, Inc., Joseph Paluso, Defendants.**

**No. 78 C 3509.**

United States District Court,
N. D. Illinois, E. D.

Dec. 18, 1979.

Ronald C. Woodruff, Pearson & Woodruff, Fayetteville, Ark., Philip T. Reinstein, Ross, Reinstein, Block & Sherman, Chicago, Ill., for plaintiff.

Michael G. Berkman and Esther O. Kegan, Kegan, Kegan & Berkman, Chicago, Ill., for defendants.

## ORDER

BUA, District Judge.

This cause comes before the court on the defendants' motion for judgment on the pleadings, Rule 12(c), Fed.R.Civ.P., or in the alternative for summary judgment. Rule 56, Fed.R.Civ.P.

 In that the defendants' motion is founded in part upon the contention that this court lacks jurisdiction over the subject matter of the plaintiff's complaint, said motion will be treated as one for dismissal, pursuant to Rule 12(h)(2), Fed.R.Civ.P. Although in her pleading she fails to make

any clear statement with respect to federal jurisdiction, the plaintiff does purport to state a federal claim for copyright infringement.[1] Also contained in her complaint are state common law claims for breach of contract, false representation, slander and interference with business relationships.

As the plaintiff has attempted to state a claim for copyright infringement, the first question this court must resolve is whether federal jurisdiction properly lies pursuant to 28 U.S.C. § 1338(a). § 1338(a) vests the federal courts with subject matter jurisdiction to hear claims "arising under any Act of Congress relating to . . . copyrights." If the case at bar involves claims of infringement or requires construction of the copyright at issue, moreover, the right to hear the action rests exclusively with the federal courts. *See* 17 U.S.C. § 301.

Central to the plaintiff's infringement claims are certain licensing agreements that pertain to the manufacture, sale, and distribution of the copyrighted art works at issue. The plaintiff, Barbara Burns, and defendant Rockwood Distributing Company appear to hold nearly identical licenses applicable to the manufacture and sale of said art works. These licenses, however, relate to different states.

Both parties obtained their licenses from Apsit Brothers of California, the original owner of the alleged copyrights. The plaintiff contends that these licensing agreements granted her the exclusive right to produce and sell the art works in certain states, including Illinois. She alleges that defendants Rockwood and Paluso, Rockwood's president, have violated the licensing agreements by selling the copyrighted art works in Illinois, with full knowledge of plaintiff's exclusive territorial rights. She further alleges that the defendant White Art Studios has infringed upon her copyright privileges by selling and manufacturing the art works in Illinois.

The provisions of the Copyright Act of 1976 require that certain conditions be fulfilled before an infringement action may be brought. One such prerequisite to the filing of a copyright infringement action is copyright registration. § 411(a) of the Act provides that "no action for infringement of the copyright in any work shall be instituted until registration of the copyright claim has been made in accordance with this title." It is, moreover, well settled that copyright registration is a condition precedent to filing suit. *E. g., Roth Greeting Cards v. United Card Co.*, 429 F.2d 1106 (9th Cir. 1970); *Frederick Fell Publishers v. Lorayne*, 422 F.Supp. 808 (S.D.N.Y.1976); *Algonquin Music, Inc. v. Mills Music, Inc.*, 93 F.Supp. 268 (S.D.N.Y.1950).[2]

The complaint in the present case does not include a copy of the registration certificate, nor has compliance with the registration provisions of the Copyright Act otherwise been indicated.[3] Said complaint, therefore, is defective and must be dismissed. The plaintiff, however, may cure

---

1. The complaint refers to 28 U.S.C. § 1400 and 17 U.S.C. § 501 as bases for the court's jurisdiction. 28 U.S.C. § 1400, however, in reality is a venue provision, and 17 U.S.C. § 501 is merely an authorization provision which permits a plaintiff to sue under the Copyright Act, subject to the express requirements of the statute. The proper jurisdictional provision is 28 U.S.C. § 1338(a).

 It should be noted, also, that the complaint is inartfully drafted. The plaintiff attempts to allege several claims for relief but fails to separate them into distinct counts as is required by Rule 9 of the Federal Rules of Civil Procedure. While this is not a fatal defect, the plaintiff's failure to separate her claims in the manner specified has made her complaint unnecessarily confusing and difficult to comprehend.

2. In *Frederick Fell Publishers*, the court dismissed a complaint which had not alleged compliance with the registration provisions of the Copyright Act. The court held that such registration was "jurisdictionally required," and dismissed the complaint without prejudice to the plaintiff's filing an amended complaint. 422 F.Supp. at 811.

3. Chapter 4 of the Copyright Act, 17 U.S.C. § 401 et seq., sets out the procedures for copyright registration, which include the deposit of copies of the work to be copyrighted.

 The complaint also should have included a description of the allegedly copyrighted art works so that the defendant would have notice of the specific works in question.

this defect by affirmatively demonstrating that Apsit Brothers had procured a valid registration of the initial copyrights. This is so because, through 17 U.S.C. § 201(d), the Copyright Act of 1976 embodies the concept of divisibility of copyright ownership.[4] Assuming that Apsit Brothers was the "initial owner" of the copyrights, as defined in § 201(a),[5] and that the plaintiff's license constituted the transfer of an exclusive right,[6] under § 408(a) either party would be able to register, as both would be copyright "owners" under the new Act.[7]

■ The concept of copyright divisibility thus bears importantly on the plaintiff's rights. Since any of the exclusive rights that comprise a copyright can be transferred and owned separately under 17 U.S.C. § 201(d)(2), all the remedies accorded to the "copyright owner" are available to the owner of any particular "exclusive right". That being so, careful consideration must be given to the parties' licensing agreements with Apsit.

Reading the complaint most favorably to her, the court assumes for purposes of this motion that the plaintiff's written agreement with Apsit Brothers is the equivalent of an exclusive license under the Act. Since defendant Rockwood appears to have a similar license agreement with Apsit,

Rockwood also may be the owner of an exclusive right in Apsit's initial copyrights. The chief distinction in the plaintiff's and defendant's rights, thus, is geographical. Under this analysis, if Rockwood in fact sold the copyrighted art works in Illinois, plaintiff's territory, it would be guilty of copyright infringement. Similarly, defendant White Art Studios would be in violation of the plaintiff's rights if it manufactured or sold the art works in Illinois.[8]

■ Assuming that the plaintiff can amend her complaint to incorporate the necessary registration requirements, however, there remains a further statutory bar to the maintenance of her infringement action. As the defendants point out, the complaint does not allege recordation of plaintiff's license, as is required by 17 U.S.C. § 205(d). § 205(d) provides that:

[n]o person claiming by virtue of a transfer to be the owner of a copyright or of any exclusive right under a copyright is entitled to institute an infringement action under this title until the instrument of transfer . . . has been recorded in the Copyright Office, but suit may be instituted after such recordation on a cause of action that arose before recordation.

4. § 201(d) of the Copyright Act contains the principle of unlimited alienability of copyright. Subsection (1) states that "ownership of a copyright may be transferred in whole or in part by any means of conveyance . . . ." In § 201(d)(2), for the first time, there is explicit statutory recognition of the concept of divisibility of copyright. H.R.Rep. No. 1476, 94th Cong., 2d Sess. 128, *reprinted in* [1976] U.S. Code Cong. & Admin. News, pp. 5659, 5744. This subsection provides that "[a]ny of the exclusive rights comprised in a copyright, including any subdivision of any of the rights specified by Section 106, may be transferred as provided by clause (1) and owned separately. The owner of any particular exclusive right is entitled . . . to all of the protection and remedies accorded to the copyright owner."

5. Under § 201(a), "[c]opyright in a work protected under this title vests initially in the author or authors of the work."

6. § 101 of the Act defines "transfer of copyright ownership" as "an assignment, mortgage, exclusive license, or any other conveyance,

alienation, or hypothecation of a copyright or of any of the exclusive rights comprised in a copyright, whether or not it is limited in time or place of effect, but not including a nonexclusive license."

7. § 101 of the Act states:
" 'Copyright owner,' with respect to any one of the exclusive rights comprised in a copyright, refers to the owner of that particular right." § 408(a) provides that "the owner of copyright *or* of any exclusive right in the work may obtain registration of the copyright claim by delivering to the Copyright Office the deposit specified to by this section, together with the application and fee . . ." (emphasis added). *See* Comment, Divisible Copyright Under the Copyright Act of 1976: The Effect on Registration, Recordation, Notice, and Standing to Sue, 57 Neb.L.R. 1033 (1978).

8. Reproducing and distributing the copyrighted works are two of the exclusive rights belonging to the copyright owner. 17 U.S.C. § 106(1), (3).

■ This recordation requirement represents a change from the former law.[9] The previous recordation provision did not make recordation a condition precedent to bringing an infringement action. In fact, because recordation was not mandatory, its scope and effect often was unclear.[10] The words of § 205(d), on the other hand, explicitly mandate recordation of the transfer of rights in a copyright as a prerequisite for filing suit. From the plain language of Section 205(d), it is clear that an allegation of recordation is a jurisdictional prerequisite to the institution of a copyright infringement action. The plaintiff's failure to allege recordation, thus, also is fatal to her right to bring the present action.

■ The foregoing analysis, of course, is premised upon the exclusive nature of plaintiff's interest in the licensing agreements involving the art works. If, however, the agreements are characterized as non-exclusive licenses, the recordation requirement of § 205(d) would not be applicable, because nonexclusive licenses do not have to be recorded.[11] In such a case, though, the plaintiff would not be a "copyright owner" under 17 U.S.C. § 101, and accordingly would not have an actionable claim under the Copyright Act. To recover, she instead would have to pursue her potential contract remedies. Also, by having failed to state a claim arising under the Copyright Act, the plaintiff cannot properly

seek to have her other claims heard in this court pursuant to 28 U.S.C. § 1338(a).

■ Although it is not at all clear from the face of the complaint, the plaintiff may be attempting to invoke the jurisdiction of this court based upon diversity of citizenship. 28 U.S.C. § 1332(a). She alleges in her complaint that she is a citizen of Missouri, and lists the principle places of business of the defendant corporations as Wisconsin and Illinois. These allegations, however, are not sufficient to allow this court to hear the present matter based upon diversity jurisdiction.

■ Under 28 U.S.C. § 1332, the citizenship of each party must be distinctly and affirmatively averred. *McGlynn v. Employers Commercial Union Ins. Co. of America*, 386 F.Supp. 774 (D.P.R.1974), *citing Robertson v. Cease*, 97 U.S. 646, 24 L.Ed. 1057 (1878). Corporate citizenship is evidenced both by the state of incorporation and by the corporation's principle place of business. *Dining Car Employees Local No. 385 v. Chicago, M. & St. P. & P. R. Co.*, 323 F.2d 224 (7th Cir. 1963); *Oskierko v. Southwestern Horizons, Inc.*, 60 F.R.D. 365 (N.D. Ill.1973). For federal jurisdiction to properly lie under § 1332, moreover, the citizenship of each plaintiff also must be shown to be diverse from that of each defendant. *See Strawbridge v. Curtiss*, 7 U.S. 267, 2

9. The Copyright Act of 1909 required that an assignment of copyright ownership must be recorded within three months after its execution, or it would be void against subsequent purchasers for valuable consideration who took without notice, and who duly recorded the assignment. Copyright Act, Ch. 320, § 44, 35 Stat. 1975 (1909). Cases construing the former Copyright Act's recordation provision generally held that the purpose of recording was to protect the assignee of a copyright against a bona fide purchaser, rather than to create any new legal ownership rights. *Tobias v. Joy Music, Inc.*, 204 F.Supp. 556, 559 (S.D.N.Y.1962); *Edward B. Marks M. Corp. v. Charles K. Harris M. P. Co.*, 255 F.2d 518, 521 (2d Cir. 1958). The recordation of a copyright assignment, however, was viewed as unnecessary to the protection of the assignee's rights against an infringer, *New Fiction Publishing Co. v. Star Co.*, 220 F. 994 (S.D.N.Y.1915), and a plaintiff's failure to record was not considered to be a

valid reason for dismissing an action for infringement, *Kenya Music, Inc. v. Warner Bros., Inc.*, 391 F.Supp. 1228 (S.D.N.Y.1975).

10. The former Copyright Act required only assignments to be recorded. Licenses were not explicitly included in the recordation provision. Since divisibility of copyright ownership was not expressly recognized in the old Act, there was considerable confusion with respect to the legal effect of recording licenses. Comment, Neb.L.Rev., *supra* at 1049–50. The present § 205 was enacted to eliminate such confusion. H.R.Rep. No. 1476, 94th Cong., 2d Sess. 128, *reprinted in* [1976] U.S.Code Cong. & Admin. News, p. 5744.

11. The Copyright Act provides that "[a] nonexclusive license, whether recorded or not, prevails over a conflicting transfer of copyright ownership [under certain conditions]."

L.Ed. 435 (1806); *Harker v. Kopp*, 172 F.Supp. 180 (N.D.Ill.1959).

In the present case it cannot be determined from the face of the plaintiff's complaint whether such complete diversity exists. Missing are the defendants' states of incorporation. The complaint merely alleges that Rockwood and White Art Studios are corporations, "organized and existing pursuant to the laws of a state within the United States." In that said state clearly could be Missouri, the state of plaintiff's residence and citizenship, federal jurisdiction well may not lie.

 The burden of establishing federal jurisdiction is on the party asserting such jurisdiction, and the jurisdictional basis must be clear from the face of the complaint itself. If diversity of citizenship is shown to exist between the plaintiff and one of several defendants, but the citizenship of the other defendants is not indicated, federal jurisdiction will not lie. *Colony Coal & Coke Corp. v. Napier*, 28 F.Supp. 76 (D.C.Ky.1939).

 Accordingly, for the reasons discussed above, the present complaint is dismissed, without prejudice, for lack of subject matter jurisdiction. The other issues and potential claims raised by the plaintiff, therefore, need not be reached by the court at this time.[12]

 The remaining issue before the court is whether the defendants' three counterclaims also must be dismissed. Generally, when a complaint is dismissed for lack of federal jurisdiction, compulsory counterclaims, because they arise out of the same transaction as the original claim, also will be dismissed. *T. Square Equipment Corp. v. Gregor J. Schaefer Sons, Inc.*, 272 F.Supp. 962, 964 (E.D.N.Y.1967); *Manufacturers Cas. Ins. Co. v. Arapahoe Drilling Co.*, 267 F.2d 5, 8 (10th Cir. 1059).[13] If an independent jurisdictional basis exists, however, the court is not precluded from determining the merits of the counterclaim despite dismissal of the primary claim. *Switzer Bros., Inc. v. Chicago Cardboard Co.*, 252 F.2d 407 (7th Cir. 1958).

 Defendants' first counterclaim is for a declaratory judgment of copyright non-infringement. Although jurisdiction is alleged to lie pursuant to 28 U.S.C. § 1338(a), it is difficult to determine how the facts and issues involved in this counterclaim differ from the facts and issues involved in the complaint.[14] Moreover, because both claims clearly will require the construction of the licensing agreements, it can reasonably be concluded that they arose "out of the same transaction." This counterclaim thus appears to be compulsory in nature and, because there is no independent

12. The plaintiff's remaining claims are all founded upon state common law. This court, therefore, has no direct jurisdiction to hear them. That being so, in that her federal copyright action has already been dismissed, this court does not believe that, under the circumstances, it can properly exercise pendent jurisdiction to hear the plaintiff's remaining claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

13. Since compulsory counterclaims arise out of the same transaction that is the subject matter of the complaint and do not require for their adjudication the presence of any third party over whom the court cannot acquire jurisdiction, Rule 13(a), Fed.R.Civ. P., compulsory counterclaims are looked upon as falling within the court's ancillary jurisdictional powers. *Moore v. New York Cotton Exchange*, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926); *Chicago & Northwestern Transp. Co. v. Atchison, T. & S.F.R.R.*, 367 F.Supp. 801 (N.D.Ill.1973). Per-

missive counterclaims, on the other hand, because they need not be related to the subject matter of the complaint, require an independent basis of jurisdiction to withstand dismissal. *Jones v. Sonny Gerber Auto Sales*, 71 F.R.D. 695 (D.Neb.1976). In the present context, however, it is immaterial whether the counterclaims under discussion are considered compulsory or permissive. Whenever the primary [plaintiff's] claim is dismissed for want of federal jurisdiction, any counterclaims being raised must themselves be supported by independent federal jurisdictional grounds to withstand dismissal.

14. In their counterclaim for a declaration of copyright noninfringement, the defendants cannot rely on 28 U.S.C. § 1338(a) as a basis for federal jurisdiction. Simply put, satisfaction of the jurisdictional prerequisites of copyright registration and recordation also is not shown in the defendants' counterclaim.

basis for federal jurisdiction, is ordered dismissed for that reason.

 The second counterclaim consists, solely of state law claims for unfair competition and slander. As regards this counterclaim the defendants contend that this court has diversity jurisdiction, and that ancillary jurisdiction also may properly be exercised. Since, however, the plaintiff's complaint was dismissed for lack of federal jurisdiction, the court cannot properly retain the counterclaim pursuant to any ancillary jurisdiction theory. The defendants' allegation of § 1332(a) diversity jurisdiction also must fail. As only the citizenship of the plaintiff and one defendant has been stated, the requisite complete diversity has not been shown. Therefore, in that it does not properly set forth an independent basis for federal jurisdiction, the defendants' second counterclaim also is ordered dismissed without prejudice.

Defendants' third counterclaim alleges a violation of Section 1 of the Sherman Antitrust Act. 15 U.S.C. § 1. Subject matter jurisdiction over this claim is purported to lie pursuant to 15 U.S.C. § 15.[15]

The allegations contained in this counterclaim are merely conclusory, stating that the plaintiff "has been engaged in an unlawful combination and conspiracy to monopolize . . . interstate commerce . . . in the sale of copyrighted art works produced under license from Apsit." The only alleged acts in furtherance of the conspiracy to restrain trade are that the plaintiff "has threatened to sue and has sued Rockwood's customers in the States of Illinois, Iowa, and Nebraska" and that the plaintiff "conspired with Apsit to force Rockwood out of the business . . ."

 It has been held that where a counterclaim states a cause of action seeking affirmative relief independent of that stated in the complaint, dismissal of the complaint does not preclude a trial and determination of the counterclaim. *E. g.,*

*Pioche Mines Consol., Inc. v. Fidelity-Philadelphia Trust Co.,* 206 F.2d 336 (9th Cir. 1953). Under the circumstances of this case, however, it appears that this counterclaim also should be dismissed. Although, technically speaking, said counterclaim appears to be supported by an independent basis of jurisdiction, the court's dismissal of it without prejudice will not impair the defendants' rights. The defendants may raise the claim again, if the plaintiff amends her complaint. Alternatively, the defendants, if they so elect, can easily bring a separate antitrust action at a later time.

Interpretation of the licensing agreements maintained between the plaintiff, the defendants, and Apsit Brothers, is critical to any determination on the merits of the plaintiff's copyright and breach of contract claims. The construction of these licensing agreements also is central to defendants' potential antitrust action. A well settled policy in the federal courts is to provide for, to the extent possible, the expeditious resolution of an entire controversy in one proceeding. Regarding the present matter, the court's retention of the single counterclaim under discussion clearly would abrogate this policy. This is especially true where, as here, the allegations of the antitrust violation are vague and conclusory and depend on many of the same issues as in the complaint.

In summary, the following is ordered:

(a) The Order of this court dated June 15, 1979 dismissing the present matter for want of prosecution is ordered vacated.

(b) The plaintiff's complaint is dismissed in its entirety for lack of subject matter jurisdiction. Said dismissal, however, is without prejudice, and the plaintiff is given to January 23, 1980 to, if possible, amend her complaint and remedy the deficiencies indicated above.

(c) Each of the defendants' three counterclaims are ordered dismissed for lack of

---

**15.** 15 U.S.C. § 15 states in pertinent part:
"[a]ny person who shall be injured . . . by reason of anything forbidden in the antitrust

laws [is authorized to] sue therefor in any district court . . ."

jurisdiction. Said dismissals also are without prejudice.

IT IS SO ORDERED.