Lois B. MORRIS, Plaintiff–Appellant,

v.

BUSINESS CONCEPTS, INC., James J. Maher and Petra H. Maher, Defendants–Appellees.

No. 00–7509.

United States Court of Appeals, Second Circuit.

Argued April 3, 2001.

Decided July 26, 2001.

David B. Wolf, New York, NY, (Cowan, DeBaets, Abrahams & Sheppard, LLP, of counsel), for Plaintiff–Appellant.

Jeffrey A. Oppenheim, New York, NY, (Kane Kessler, P.C., of counsel), for Defendants–Appellees.

(Charles D. Ossola, Jule L. Sigall, Washington, DC, (Arnold & Porter, of counsel), for Amici Curiae American Society of Media Photographers, Inc., The Authors Guild, Inc., the North American Nature Photography Association, the National Association of Science Writers, Inc., the Professional Photographers Association, the American Society of Journalists and Authors, the National Writers Union, the Graphic Artists Guild, the Science Fiction Writers of America, Inc., the Picture Agency Council of America, Editorial Photographers, the National Press Photographers Association, Inc., the American Society of Picture Professionals, Inc., and the Advertising Photographers of America, in support of Plaintiff–Appellant.).

Before OAKES, KEARSE and CABRANES, Circuit Judges.

OAKES, Senior Circuit Judge:

Plaintiff Lois Morris, a journalist, brought suit against defendants Business Concepts, Inc., James Maher, and Petra Maher (collectively "BCI") for copyright infringement arising out of BCI's unauthorized use of Morris's articles in its newsletter. The United States District Court for the Southern District of New York, Richard Conway Casey, *Judge*, granted summary judgment to the defendants on the ground that the court lacked jurisdiction over the copyright claims. Because we agree with the district court that registration of the collective works in which Morris's articles initially appeared did not satisfy her registration requirement for the purposes of maintaining an infringement action, we affirm.

## BACKGROUND

For the past eight years, Morris has written a series of articles for a column in *Allure* magazine, a monthly publication of The Condé Nast Publications, Inc. ("Condé Nast"). The column, called "Mood News," addresses health, fitness, and psychology topics. Annual written agreements between Morris and Condé Nast specified that she would write twelve articles per year, in which Condé Nast was granted exclusive first worldwide publication rights for ninety days after their publication in *Allure*. Morris retained ownership of the copyright in the articles.

Condé Nast received Certificates of Registration from the Register of Copy-

rights for each issue of *Allure* in which Morris's articles were published. These registrations covered the issues as collective works. Morris did not register with the Register of Copyrights her own copyrights in the articles.

Defendants BCI publish a bi-monthly newsletter called *Psychology and Health Update*. Between January 1994 and June 1998, BCI copied essentially verbatim in its newsletter twenty-four of Morris's "Mood News" articles. More than half of the articles appeared in *Psychology and Health Update* within ninety days of their initial publication in *Allure*. BCI ceased to publish the articles after being contacted by counsel for Condé Nast and for Morris, and admitted that the copying was unauthorized.

In January 1999, Morris brought suit for copyright infringement as well as for false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a) (2000). BCI moved for summary judgment on all claims, arguing that the registration requirement of 17 U.S.C. § 411(a) (2000) for Morris's articles was not met by Condé Nast's collective work registration. Morris did not object to dismissal of her Lanham Act claim, but opposed the motion with respect to the copyright claims. In March 2000, the district court granted summary judgment, finding that it lacked subject matter jurisdiction over the copyright claims because Morris's articles were not registered as required to maintain an infringement action. This appeal followed.

## DISCUSSION

■ The Copyright Act requires that "no action for infringement of the copyright in any United States work shall be instituted until registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a); *see also Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452, 453 (2d Cir.1989) ("proper registration is a prerequisite to an action for infringement"). In this case, it is undisputed that Morris has not registered her own copyrights in the articles copied by BCI.[1] Instead, she seeks to meet the requirements of § 411(a) by relying on the collective work registrations made by Condé Nast for the issues of *Allure* ·of which her articles were constituent parts. Morris argues that because Condé Nast was an exclusive licensee of her articles, it was a "copyright owner" of them, and that therefore its collective work registrations also covered the articles.

■ Under the law of this Circuit, where the owner of a copyright for a collective work also owns the copyright for a constituent part of that work, registration of the collective work is sufficient to permit an infringement action under § 411(a) for the constituent part. *See Streetwise Maps, Inc. v. Vandam, Inc.*, 159 F.3d 739, 747 (2d Cir.1998) (registration of pre-existing work was sufficient for infringement action on derivative work when plaintiff was copyright owner of both); *Woods v. Universal City Studios, Inc.*, 920 F.Supp. 62, 64 (S.D.N.Y.1996) (registration of copyright for collective work was sufficient to permit action on constituent part when

1. BCI points out that Morris could have cured the jurisdictional defect here by registering those of her articles that were not time-barred by 17 U.S.C. § 507(b) (2000) (setting statute of limitations at three years). Such registration, however, would not permit her to recover statutory damages and attorney's fees under 17 U.S.C. §§ 504 and 505 (2000). *See* 17 U.S.C. § 412(2) (2000) (requiring registration within three months of first publication for recovery of statutory damages and attorney's fees). Given that actual damages can be difficult to prove, it is understandable that Morris chose to pursue her case in such a manner as would allow her to recover statutory damages if she prevailed.

copyright owner was the same for both). Morris is correct that if she can establish that Condé Nast owned the copyright in Morris's articles at the time it registered the issues of *Allure* as collective works, then that registration was adequate to create subject matter jurisdiction pursuant to § 411(a).

This case therefore turns on the question whether, when an author has retained ownership of copyright, an exclusive licensee like Condé Nast can be considered a "copyright owner" capable of satisfying § 411(a)'s registration requirement. We have not addressed this issue in previous cases nor, it seems, have any other courts, for Morris does not cite any case directly on point.[2] Our interpretation of the Copyright Act, however, leads us to conclude that an exclusive licensee is not a copyright owner for the purposes of § 411(a). We accordingly agree with the district court that Condé Nast's registrations do not afford copyright protection to Morris's articles.

## I. *The Copyright Owner*

■ To interpret the statutory provisions at issue here, we must start with the concept of divisibility of copyright. Subsection 201(d)(2) of the Copyright Act provides:

> Any of the exclusive rights comprised in a copyright ... may be transferred ... and owned separately. The owner

of any particular exclusive right is entitled, to the extent of that right, to all of the protection and remedies accorded to the copyright owner by this title.

17 U.S.C. § 201(d)(2) (2000). As this language indicates, what may be divided are the various *rights* (such as publication, distribution, and reproduction) that make up a copyright, but not the copyright itself. "[T]here is never more than a single copyright in a work, notwithstanding the author's exclusive license of certain rights." 3 Melville B. Nimmer & David Nimmer, *Nimmer On Copyright* § 10.02[C][2], at 10–28 (2000). It would therefore stand to reason that an owner of a particular right—as opposed to the copyright itself—would not be a copyright owner. *See id.* at 10–29 (extension of protection and remedies under § 201(d)(2) "does not create a new copyright in the exclusive licensee.")

Morris, however, argues that there is a "doctrine of divisibility of copyright ownership." She points to the definition of "copyright owner" contained in Section 101 of the Copyright Act which states that a "'[c]opyright owner,' with respect to any one of the exclusive rights comprised in a copyright, refers to the owner of that particular right." 17 U.S.C. § 101 (2000). She also notes that Section 101 defines a "transfer of copyright ownership" as "an assignment, mortgage, [or] exclusive license ... of a copyright or of any of the

---

**2.** The only case cited by Morris is *Burns v. Rockwood Distributing Co.*, 481 F.Supp. 841 (N.D.Ill.1979), which dismissed the plaintiff's case for lack of subject matter jurisdiction based on the absence of copyright registration. The court there noted that the plaintiff could "cure this defect by affirmatively demonstrating that [the copyright owner] had procured a valid registration of the initial copyrights." *Id.* at 845–46. It then went on to state, somewhat confusingly, that because plaintiff was an exclusive licensee, either it or the initial owner of the copyright "would be

able to register, as both would be copyright 'owners' under the new Act." *Id.* at 846.

Even if we were to give weight to this lower court case, we do not agree with Morris that it stands for the proposition that an exclusive licensee is a copyright owner capable of meeting § 411(a)'s registration requirement. Indeed, it clearly states that the initial copyright owner must have registered the copyright. We therefore decline Morris's invitation to apply here *Burns*'s reasoning—or lack thereof—with respect to registration by exclusive licensees.

exclusive rights comprised in a copyright." *Id.* Given a close reading, this statutory language does not support Morris's notion that an exclusive licensee is a copyright owner.

■ Section 101's definition of a "copyright owner" is, by its words, limited to owners of exclusive rights. It therefore does not actually address who owns the underlying copyright, but rather illuminates how the Copyright Act refers to the owners of particular rights in its various provisions. *See* 3 *Nimmer* § 10.02[C][2], at 10–30 to 10–31 (suggesting that Section 101's definition of "copyright owner" "bears such a meaning only when the term is used 'with respect to any one of the exclusive rights comprised in a copyright.'" (quoting 17 U.S.C. § 101)). Section 101's definition of "transfer of copyright ownership" simply carries through on this manner of reference.

■ Under Section 101's definition, "an exclusive licensee may be *regarded* as the copyright owner *of the rights thus licensed.*" *See* 2 *Nimmer* § 7.16[B][2], at 7–165 n. 105.4 (emphasis added). Being "regarded" as an owner and actually being an owner are, of course, two separate things. While it is perhaps unfortunate that the Act's drafters chose to call owners of copyrights and owners of exclusive rights by the same name, we think that Section 101's definition reflects the fact that exclusive licensees are treated as copyright owners for the purpose of protection and remedy pursuant to § 201(d)(2). In other words, Condé Nast would stand in Morris's shoes with respect to infringement of the publication rights it exclusively licensed—and, as pointed out in the above quote from *Nimmer, only* for that particular right. Morris, in contrast, would have standing as the owner of the copyright to bring an action for infringe-

ment of any of the rights comprised therein.

Indeed, the construction of § 201(d)(2) itself mandates the conclusion that an exclusive licensee is not a copyright owner. The subsection states that "[t]he owner of any particular exclusive right is entitled, to the extent of that right, to all of the protection and remedies accorded to the copyright owner by this title." 17 U.S.C. § 201(d)(2). As analyzed by *Nimmer:*

> "The copyright owner" in this context must refer to the licensor, not the licensee, notwithstanding the definition in 17 U.S.C. § 101 whereby the " 'copyright owner,' with respect to any one of the exclusive rights comprised in a copyright, refers to the owner of that particular right." If "the copyright owner" in this context referred to the licensee, the sentence would be tautological. That is, it would mean: "The owner of any particular exclusive right is entitled, to the extent of that right, to all the protections and remedies accorded to [the owner of such particular exclusive right]."

3 *Nimmer* § 10.02[C][2], at 10–29 n. 52. Subsection 201(d)(2) thus draws a distinction between a copyright owner and an exclusive licensee that precludes the argument for "divisibility of copyright ownership" urged by Morris.

Based on our understanding of the above provisions, we conclude that Section 101 cannot be read to mean that an owner of an exclusive right is also, thereby, an owner of the underlying copyright. Condé Nast was therefore not a copyright owner of Morris's articles when it registered the issues of *Allure* as collective works.

Our conclusion is bolstered by the *Circular for Copyright Registration on Form SE,* which concerns the form used by Condé Nast to register the issues of *Allure*

as serial publications. In the Circular, the Copyright Office states:

> The claimant registering a serial may claim copyright not only in the collective-work authorship for which the claimant is responsible but also in any independently authored contributions in which all rights have been transferred to the claimant by the contributors.
>
> If the serial issue includes any independently authored contributions in which all the rights have *not* been transferred by the contributor to the claimant for the serial issue as a whole, those contributions are not included in the claim being registered, because the claimant in these contributions is different from the claimant in the entire serial issue.

Copyright Office Circular No. 62 (Serials) (emphasis in original). This language highlights that if *all* rights in a constituent work have not been transferred to the claimant—in other words, the claimant is simply an exclusive licensee—a collective work registration will not apply to the constituent work. If, on the other hand, all rights have been transferred to the claimant, making it the owner of the copyright, then the constituent work is included in the registration.

■ While we recognize that "the Copyright Office has no authority to give opinions or define legal terms, and [that] its interpretation on an issue never before decided should not be given controlling weight," *Bartok v. Boosey & Hawkes, Inc.*, 523 F.2d 941, 946–47 (2d Cir.1975) (footnotes omitted), we nevertheless take comfort from the Office's agreement with our interpretation of what copyright ownership means in the context of collective work

registrations.[3] Unless the copyright owner of a collective work also owns all the rights in a constituent part, a collective work registration will not extend to the constituent part.

Because we find that Condé Nast was not a copyright owner of Morris's articles when it registered the issues of *Allure* as collective works, her articles did not fall within Condé Nast's collective works registrations as constituent parts.

## II. *Registration of Morris's Articles*

■ Morris also argues that, as an exclusive licensee, Condé Nast had the right to register the copyrights in her articles and intended to do so when it registered the issues of *Allure* in which her articles appear. While Morris is correct that Condé Nast *could* have registered her copyrights, we disagree that it actually did so.

Subsection 408(a) of the Copyright Act provides that "the owner of copyright or of any exclusive right in the work may obtain registration of the copyright claim." 17 U.S.C. 408(a) (2000). As the owner of the exclusive first right to publish Morris's articles for a ninety-day period, Condé Nast falls within the scope of § 408(a). It therefore had the right to register the copyrights in Morris's articles.

Subsection 409 of the Act, however, requires that an application for copyright registration include, among other things, "(1) the name and address of the copyright claimant; (2) . . . the name and nationality or domicile of the author or authors . . . ; [and] (6) the title of the work, together with any previous or alternative titles under which the work can be identified . . . ." 17 U.S.C. § 409 (2000). Condé Nast's reg-

---

**3.** Indeed, the Supreme Court recently affirmed in *United States v. Mead Corp.*, — U.S. —, 121 S.Ct. 2164, 2175, 150 L.Ed.2d 292 (2001), that "an agency's interpretation may merit some deference whatever its form, giv-

en the 'specialized experience and broader investigations and information' available to the agency[.]" (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 139, 65 S.Ct. 161, 89 L.Ed. 124 (1944)).

istrations of *Allure* contained none of these items with respect to Morris's articles: None of the registrations identified Morris as the "copyright claimant,"[4] none of them specified Morris as the author of the work, and none of them listed the titles of Morris's articles.

Morris admits that Condé Nast did not designate any of these items on its copyright registrations, but contends that these omissions were errors that can be overlooked. To support her contention, Morris relies on *Wales Industrial Inc. v. Hasbro Bradley, Inc.,* 612 F.Supp. 510 (S.D.N.Y. 1985), where the district court held that improper designation of the "copyright claimant" on a registration certificate was not grounds to dismiss an infringement claim unless the error was intentional. In that case, Hasbro improperly designated itself as the "copyright claimant" in registrations for certain toy robots. The district court found that this "alleged error would not invalidate the registrations" because the error "was a technical misdescription ... [that] could readily be corrected[.]" *Id.* at 515. Because there was "no evidence that the claimed error was committed knowingly," the court held that dismissal of Hasbro's infringement action was not required. *Id.*

We do not find a persuasive parallel between *Wales* and this case. Unlike the registrations in *Wales,* which were clearly intended for the toy robots at issue there, Condé Nast's registrations were not intended for Morris's articles but, rather, for the issues of *Allure* as collective works. *See Publications Int'l. Ltd. v. Meredith Corp.,* 88 F.3d 473, 480 (7th Cir.1996) ("A compilation copyright protects the order and manner of the presentation of the compilation's elements, but does not *necessarily* embrace those elements."); *Howard v. Sterchi,* 725 F.Supp. 1572, 1575 (N.D.Ga. 1989) (same). Morris cannot reasonably contend that the valid registrations of *Allure* were, in reality, error-laden registrations of her articles.

Moreover, even if we assume *arguendo* that Condé Nast's registrations were intended for Morris's articles, the errors contained in the registrations would be much more than the minor "technical misdescriptions" discussed in *Wales;* these errors would render the registrations completely inaccurate. The registrations contained *none* of the information required by § 409 for proper registration of the articles, such as Morris's name, the title of her articles, or the proper copyright claimant. Accordingly, Condé Nast's registrations cannot be viewed as valid copyright registrations under § 408(a).

In light of the foregoing, we agree with the district court that subject matter jurisdiction was lacking because the registration requirement of § 411(a) was not satisfied in this case.

### III. *Goodis Argument*

Morris raises the additional argument, echoed by the *amicus curiae,* that not allowing her to rely on Condé Nast's registrations will produce the "harsh result" we counseled against in *Goodis v. United Artists Television, Inc.,* 425 F.2d 397, 400 (2d Cir.1970); *see also Abend v. MCA, Inc.,* 863 F.2d 1465, 1469–70 (9th Cir.1988) (adopting *Goodis* holding). In

---

4. Morris was the "copyright claimant" for her articles because she retained ownership of the copyrights. As explained by *Nimmer:*

> Although either "the owner of copyright *or* of any exclusive right may obtain registration of the copyright claim," the "copyright claimant" in whose name registration is made must be either the author of the work or one who "obtained ownership of the copyright," not merely one who obtained ownership of certain exclusive rights under the copyright.

> 3 *Nimmer* § 10.02[C][2] at 10–31 (footnotes omitted).

*Goodis,* we examined whether, under the prior Copyright Act of 1909, notice of copyright by a magazine was sufficient to obtain a valid copyright on behalf of the author of an individual work contained in the magazine, and concluded that it was. *See id.* at 399. Unlike the current Copyright Act, the prior Act mandated indivisibility of copyright, which meant that if the author did not obtain a copyright in his work, publication would put the work into the public domain. We said in *Goodis* that we were "loath to bring about the unnecessarily harsh result of thrusting the author's product into the public domain," *id.* at 400, when it was clear from the magazine's copyright notice that the author did not intend such a result.

Morris asks us to draw a parallel between the loss of copyright faced by the plaintiff in *Goodis* and the loss of access to statutory damages she faces here. Although we are not without sympathy for the burden § 411(a)'s registration requirement places on journalists such as Morris, as well as on all those for whom registering copyrights is an overwhelming financial and temporal commitment, we do not think that that burden is equivalent to the loss of copyright altogether. Unlike the plaintiff in *Goodis,* Morris will continue to retain all rights in her work. Moreover, if she registers her copyrights in her articles, she will be able to collect statutory damages against future infringers. We do not consider this a "harsh result" on par with the situation we addressed in *Goodis.*

Perhaps more importantly, the result we sought to avoid in *Goodis* was the product

of a "judge-made rule," 425 F.2d at 400, while here we are faced with a statute requiring registration as a predicate to obtaining statutory damages. *See* 17 U.S.C. § 412 (2000). We of course are not in a position to second-guess Congress's decision to enact this statute, and are unwilling to create an exception to it that might disrupt the statutory scheme of the Copyright Act.[5] We therefore decline to extend our holding in *Goodis* to reach the facts of Morris's case.

### CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment to the defendant for lack of subject matter jurisdiction.

---

**5.** Morris cites *Curtis v. General Dynamics Corp.,* No. C89–566S, 1990 WL 303664, at *1 (W.D.Wash. Feb.20, 1990), which held that the registration of the magazine in which the work appeared was effective for the purposes of obtaining statutory damages when the individual author had registered his own copyright too late. The court found that "[t]he intent of Congress to limit the award of statu-

tory damages and attorney's fees to those cases where registration is effected is not frustrated by such a holding." *Id.; see also Hilliard v. Mac's Place, Inc.,* No C93–1248WD, 1994 WL 323961, at *1 (W.D.Wash. Mar.25, 1994) (quoting *Curtis* ). Given the factual differences between these cases and Morris's, as well as their isolated status in federal jurisprudence, we decline to follow them.