**XOOM, INC., et al., Plaintiff,**

v.

**IMAGELINE, INC., et al., Defendant.**

**No. Civ.A.3:98CV00542.**

United States District Court, E.D. Virginia, Richmond Division.

April 5, 1999.

Order denying reconsideration, June 10, 1999.

Tobey Baroukh Marzouk, Marzouk & Parry, Washington, DC, Robert Michael Tyler, Brian Charles Riopelle, McGuire, Woods, Battle & Boothe, Richmond, VA, Thomas M. Parry, Marzouk & Parry, Washington, DC, for Xoom, Inc., Aztech New Media International Corp., Media Graphics International, Inc., plaintiffs.

Richard A. Diamond, Chandler, Franklin & O'Bryan, Charlottesville, VA, for Imageline, Inc., George P. Riddick, III, defendants.

Terri Lyn Bowman, Roger Patrick Furey, Arter & Hadden, Washington, DC, Mark A. Losey, Arter & Hadden LLP, Columbus, OH, for Compuserve Interactive Services, Inc., movant.

### MEMORANDUM OPINION

SPENCER, District Judge.

THIS MATTER comes before the Court on the following Motions for Summary Judgment:

(A) Plaintiffs' Motion for Partial Summary Judgment Based on the Affirmative Defense of Copyright Misuse (Motion No. 1);

(B) Plaintiffs' Motion for Partial Summary Judgment Dismissing or Staying Copyright Claims for Lack of Jurisdiction and if this case proceeds, Limiting Possible Statutory Damages as to Copyright Claims and Finding, as a Matter of Law, No Substantial Similarity (Motion No. 2);

(C) Plaintiffs' Motion for Partial Summary Judgment and Motion in Limine to Prevent Imageline from Using any Damage Calculation or Presenting Evidence Based on a Quantity of Allegedly Infringing Clip Art Images (Motion No. 3);

(D) Plaintiffs' Motion for Partial Summary Judgment with Respect to Unprotected Clip Art Images (Motion No. 4);

(E) Plaintiffs' Motion for Partial Summary Judgment on Defendants' Civil Conspiracy Counterclaim (Motion No. 5); and

(F) Defendants' Motion for Summary Judgment.

## I. Background

The following facts are as stated in the Complaint. XOOM distributes electronic clip art.[1] On June 4, 1997, XOOM entered into an agreement with an Australian company, Sprint Software Pty Ltd ("Sprint"), that granted XOOM the right to use, license and redistribute about 4,500 clip art images. XOOM incorporated these images into WEB CLIP EMPIRE. XOOM distributed a portion of the Sprint images to the joined plaintiffs and other sub-distributors.[2] In January 1998, XOOM learned that some of the Sprint images allegedly infringed registered copyrights owned by Imageline. XOOM filed its Complaint in this action on August 27, 1998, in an attempt to determine the allegedly infringing images, in addition to asserting claims of intentional interference with contract and conspiracy to interfere with contractual relations. The Imageline Defendants' filed an Answer and a Counterclaim, alleging copyright infringement on the part of the Plaintiffs.

## II. Standard of Review

A motion for summary judgment lies only where "there is no genuine issue as to any material fact" and where the nonmoving party is entitled to judgment as a matter of law. *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985); Fed.R.Civ.P. 56(c). The Court must view the facts and the inferences drawn therefrom in the light most favorable to the party opposing the motion. *Ballinger v. North Carolina Agr. Extension Serv.,* 815 F.2d 1001, 1004 (4th Cir.), *cert. denied,* 484 U.S. 897, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987). While viewing the facts in such a manner, the Court looks to the affidavits or other specific facts to determine whether a triable issue exists. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In determining whether summary judgment may be granted, the district court must perform a dual inquiry into the *genuineness* and *materiality* of any purported factual issues. Whether an issue is genuine calls for an examination of the entire record then before the court in the form of pleadings, depositions, answers to interrogatories, admissions on file and affidavits, under Rule 56(c) and (e).... Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice. A trial, after all, is not an entitlement. It exists to resolve what reasonable minds would recognize as real factual disputes. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985).

## III. Analysis

In order to efficiently dispose of the various issues presented by the parties in their motions for summary judgment, the Court will begin with Plaintiffs' second motion for summary judgment, after which it will consider the parties' remaining claims.

### A. Plaintiffs' Motion for Partial Summary Judgment Dismissing or Staying Copyright Claims for Lack of Jurisdiction and if this case proceeds, Limiting Possible Statutory Damages as to Copyright Claims and Finding, as a Matter of Law, No Substantial Similarity (Motion No. 2)

In this motion, Plaintiffs ask the Court to (i) dismiss Imageline's copyright counterclaims, Counts One, Four and Five, on the ground that, in the absence of valid copyright registrations for the individual images that Imageline claims are infringed, the Court has no subject matter jurisdiction under the Copyright Act or (ii) at the request of Plaintiffs, briefly stay this case to allow Imageline to file all necessary

---

1. XOOM acquires the rights to use, license and redistribute clip art. It then repackages the images and markets a series of products known as WEB CLIP EMPIRE.

2. The joined plaintiffs are Aztech New Media International Corp. and Media Graphics International, Inc.

copyright registration applications to cover the individual images and to allow XOOM to pursue discovery regarding the individual images. If this case proceeds, XOOM seeks a ruling that Imageline can recover at most a single award of statutory damages for each of the two registrations at issue in this case. Lastly, XOOM requests that the Court hold that, as a matter of law, there is no substantial similarity between the protectable elements covered by Imageline's compilation and derivative copyright registrations and the corresponding elements in the works of Plaintiffs; licensees.

### 1. Background

Imageline contends that Plaintiffs have infringed Imageline's copyrights in approximately 2,966 of the approximately 11,200 clip art images contained in two registered works—the "Imageline Master Gallery" compilation, Reg. No. VA 751–565, and the "PicturePak SuperBundle" derivative work, Reg. No. VA 745–773. Imageline premises its damages claim on a per-image, per-infringement calculation, which led them to a figure "believed to equal to exceed $60,000,000." (First Amended Counterclaim ¶ 82.)

Imageline was issued Copyright Registration No. VA 746–773 for "PicturePak SuperBundle," effective March 12, 1996. In Space 6a of the Registration form, Imageline, directed to identify "any preexisting work or works that this work is based upon," stated as follows:

PicturePak SuperBundle was compiled from five products created in 1991: PicturePak 1; PicturePak 2; PicturePak 3; PicturePak ValuePak 1; and Office Clips.

In Space 6b of the Registration form, Imageline, directed to identify "the material that has been added to this work and in which copyright is claimed," stated as follows:

New art and new text, as well as a new packaging design, for CD–ROM and diskette media.

Effective May 3, 1996, the Copyright Office issued to Imageline Copyright Registration No. VA 751–565 for "Imageline Master Gallery." In Space 6a of the Registration application, Imageline, directed to identify "any preexisting work or works that this work is based upon," stated as follows:

PicturePak SuperBundle is incorporated in Imageline Master Gallery. In Space 6b of the Registration form, Imageline, directed to identify "the material that has been added to this work and in which copyright is claimed," stated as follows:

The Imageline Master Gallery includes color, and Black & White images in the .CGM, .WMF, .EPS, .PCX, .BMP, .TIF, .TIFF, .PICT, .JPG, .GIF, and .WPG file formats.

Imageline received a letter, dated May 31, 1996, from the Copyright Office regarding its application to register the copyright in PicturePak SuperBundle.[3] The letter stated, among other things, that Imageline was not to refer in space 6b to the 1,580 images[4] published in PicturePak and Office Clips because these must be filed for separately.[5]

---

**3.** In Imageline's first attempt to register PicturePak SuperBundle it had, in space 6b, stated that the package included 1,580 clip art images in the .CGM, and .EPS file format. The Copyright Office, in its May 31, 1996 letter, pointed out that Imageline could not copyright the 1,580 images, and thus, in its revised application, Imageline deleted the reference to those images.

**4.** The parties disagree as to the interpretation of this letter; specifically, as to whether the infringing images are contained within those 1,580 images.

**5.** In this same letter, the Copyright Office stated that "[i]f [Imageline] want[ed] to obtain registration for all of the pictorial images, then [it] would have to file separate applications and fees (including separate filing fee and special handling fee) and deposit copies for each different unit of first-publication." (Tab 1, Affidavit of William Patry, Exhibit C thereto, Pls.' Mem.Supp.Mot. No. 2.)

### 2. Analysis

#### 1. Imageline's Compilation and Derivative Copyright Registrations Provide No Basis for Litigating Claims of Infringement with Respect to Individual Images.

 XOOM argues that the two Imageline registrations at issue in this case do not provide copyright protection for any of the individual images alleged to have been infringed. The Court agrees and finds that as each registration is either a compilation or a derivative copyright, it cannot provide coverage for any individual images.

17 U.S.C. § 103 states as follows:

(a) The subject matter of copyright as specified by section 102 includes compilations and derivative works, but protection for a work employing preexisting material in which copyright subsists does not extend to any part of the work in which such material has been used unlawfully.

(b) The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material. The copyright in such work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, and copyright protection in the preexisting material.

The references in the copyright registrations were to preexisting material and since Imageline has admitted that all of the images at issue in this case had previously been published as part of a single product,[6] it is clear that neither registration covers the preexisting individual images that were allegedly infringed.

The thrust of XOOM's argument is that this Court has no jurisdiction to hear Imageline's counterclaims because Imageline has never alleged that XOOM or any of its sublicensees has copied or infringed its rights with respect to the selection, arrangement and coordination of the elements of the Imageline Master Gallery or the "new text and new art" and the "packaging design" of the PicturePak Super-Bundle; rather Imageline has asserted that infringement took place only with respect to particular, individual clip art images, none of which were registered with the Copyright Office. Imageline asserts that the individual images are copyrighted and that XOOM is confused as to what actually is alleged to have been infringed; it is not just the visual pictures which have been published before, but the computer programs that comprises these WMF formatted images.[7] The computer program, along with the visual image, constitutes the new work.

Accepting Imageline's position as true, that the images at issue include the computer program as well as the visual picture, the Court finds that the computer programs are not covered by the copyright registrations either. Neither application filed by Imageline discloses that the work

---

**6.** All of the allegedly infringing images appeared in a product known as SoftKey PC Paintbrush Clip Art 3003, an unregistered work published in 1994 or 1995 with an Imageline copyright notice. (Defs.' Mem.Opp'n Mot. No. 2 at 3.)

**7.** According to Imageline, an "image" is both the computer programming that generates the "picture" and the "picture" itself. This definition would account for the visual images in the new work that look the same as older non-WMF, non-copyrighted files. Imageline encourages the Court to look past the visual

similarities as it is the WMF images, which includes both the computer programming *and* the resulting picture, which Imageline asserts that XOOM is infringing. As such, the images in WMF format that were added to the SuperPak SuperBundle package, fell within the category of "new art" as provided for on line 6b of the Registration application. Additional WMF images were then added to the Imageline Master Gallery. Those that were not added at that time had already been included as new art in the SuperPak SuperBundle and thus, were under copyright protection.

being registered included any computer software. Specifically, Imageline failed to comply with the requirements of the Copyright Office, as set forth in Circular 61 governing computer programs, which states that a copyright claimant must submit the first 25 and the last 25 pages of source code as the deposit for a computer program.[8] Imageline did not make such a deposit. Thus, it is the conclusion of the Court that the computer programs were never copyrighted.

At the request of the Plaintiffs and with no objection from the Defendants, the Court hereby orders that this matter will be stayed in order to allow Imageline additional time to file all necessary copyright registration applications to cover the individual images. In addition, the Court holds that XOOM will then be permitted to pursue discovery regarding the individual images at issue in this case.

2. Imageline Can Recover at Most A Single Award of Statutory Damages Per Registered Work Infringed

XOOM argues that Imageline should be limited to a single award of statutory damages per registered work infringed.

■ The Copyright Act provides that:
(1) [T]he copyright owner may elect ... to recover, ... an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable.... For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.
(2) In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $100,000. In a case where the infringer

sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200.

17 U.S.C. § 504(c). The case law, as well as the legislative history of the Act [9], supports XOOM's contention that § 504 should be applied as it is written. *See Religious Technology Center v. Lerma*, 40 U.S.P.Q.2d 1569, 1580, 1996 WL 633131 (E.D.Va.1996); *Stokes Seeds Ltd. v. Geo. W. Park Seed Co., Inc.*, 783 F.Supp. 104, 107 (W.D.N.Y.1991). Thus, despite Imageline's argument to the contrary, the Court holds that there should be only one award of statutory damages per registration regardless of the number of infringements or the number of products containing infringing images. *See Walt Disney Co. v. Powell*, 897 F.2d 565, 569–570 (D.C.Cir.1990).

3. As a Matter of Law, the Protectable Compilation and Derivative Elements Covered by the Imageline Master Gallery and PicturePak SuperBundle Registrations are not Substantially Similar to the Corresponding Elements in the Works of XOOM, Aztech, Media Graphics or Other XOOM Licensees

■ Although the determination of substantial similarity generally is a jury issue in copyright cases, under proper circumstances, summary judgement can be granted in favor of the alleged infringer. *See McMahon v. Prentice–Hall, Inc.*, 205 U.S.P.Q.2d 819, 824, 486 F.Supp. 1296 (E.D.Mo.1980). XOOM believes that the facts regarding substantial similarity are so one-sided that there is no reasonable

---

8. It must be "reproduced in a form visually perceptible without the aid of a machine or device, either on paper or in microform, together with the page or equivalent unit containing the copyright notice, if any."

9. (*See* Pls.' Mem.Supp.Mot. No. 2 at 22.)

difference of opinion as to how the case should be decided.

As Imageline does not contest this point, it seems undisputed that none of the Plaintiffs' allegedly infringing works copy or are substantially similar to the selection, arrangement or coordination of elements in any of Imageline's registered works.[10] Thus, the Court finds that there was no copyright violation by Plaintiffs with respect to the compilation and derivative elements covered by Imageline's two registrations.

### B. Plaintiffs' Motion for Partial Summary Judgment Based on the Affirmative Defense of Copyright Misuse (Motion No. 1)

Instead of resolving the motion at this time, the Court will continue to hold the issue under advisement for further study and analysis.

### C. Plaintiffs' Motion for Partial Summary Judgment and Motion in Limine to Prevent Imageline from Using any Damage Calculation or Presenting Evidence Based on a Quantity of Allegedly Infringing Clip Art Images (Motion No. 3)

This motion seeks to limit Imageline's ability to offer certain evidence at trial. Although couched in the language of a summary judgment motion, the Court finds that this is actually a motion in limine. As such, the issues raised herein will be addressed at a later, more appropriate time prior to trial.

### D. Plaintiffs' Motion for Partial Summary Judgement with Respect to Unprotected Clip Art Images (Motion No. 4)

Plaintiffs request an Order granting partial summary judgment on Counts One, Four and Five of Imageline's First Amended Counterclaim with respect to

---

10. Imageline never assets this claim; rather, it contends that it is the individual images

1,282 of the allegedly infringing images Plaintiffs have *filed this motion in the alternative and state that it only needs to be decided if the Court denies in whole or in part their other motions for partial summary judgment.* Since the Court has granted XOOM partial summary judgment on Motion No. 2, it sees no need to address this motion at the present time. Thus, it is deemed moot.

### E. Plaintiffs' Motion for Partial Summary Judgment on Defendant's Civil Conspiracy Counterclaim (Motion No. 5)

Plaintiffs move the Court for an Order dismissing and/or granting partial summary judgement on Count Three of Imageline's First Amended Counterclaim, alleging that XOOM and others have engaged in a civil conspiracy to infringe Imageline's copyrights. At the summary judgment hearing, Defendants conceded this issue. Thus, the Court grants the Plaintiffs' motion and holds that Count Three of the Amended Counterclaim is dismissed.

### F. Defendants' Motion for Summary Judgment

Defendants' move for summary judgment against the Plaintiffs on the following grounds:

(1) Defendants' failure to identify all of the alleged infringing electronic images does not constitute copyright misuse;

(2) Defendants' offers to license electronic images to XOOM, Macmillan and other alleged copyright infringers does not constitute copyright misuse;

(3) Defendants' copyright registrations are valid; and

(4) All of the alleged infringing electronic images are entitled to copyright protection.

that are being infringed. (*See* First Amended Counterclaim.)

The Court finds that grounds (1) and (2) are addressed in XOOM's Motion No. 1, and Grounds (3) and (4) are addressed in XOOM's Motions Nos. 2 and 4. These matters having been resolved above, the motion is denied.

## IV. Conclusion

In short, the Court GRANTS the Plaintiffs' Motion No. 2 for partial summary judgment and STAYS this case so that the Defendants may file all necessary applications to cover the individual images alleged to be infringed. The Court will take the issue of copyright misuse, raised in both Plaintiffs' Motion No. 1 and the Defendants' Motion for Summary Judgment, UNDER ADVISEMENT for further consideration. Plaintiffs' Motion No. 3, which is a motion in limine, will be considered prior to trial with any other motions in limine that are filed with the Court. Plaintiffs' Motion No. 4 is deemed MOOT and Motion No. 5, conceded by the Defendants, is GRANTED. Finally, Defendants' Motion for Summary Judgment is DENIED.

And it is SO ORDERED.

### *MEMORANDUM OPINION*

THIS MATTER comes before the Court on the Defendants Imageline, Inc. and George P. Riddick, III's Motion for Reconsideration of this Court's Order dated April 5, 1999, granting the Plaintiff's Motion for Summary Judgment and Staying the Case so that the Defendants could seek copyrights in the individual images at issue in this suit. Specifically, Defendants allege that the Court has committed the following errors:

1. The Court erred in adopting as a basis for its decision Plaintiff's erroneous assertion that computer source code must be deposited in all cases where a copyright owner seeks to register a copyright in material that includes computer programming.

2. The Court failed to perform the factual and legal analysis necessary to support its conclusion that, as a matter of law, Defendants' copyright registrations do not include the individual images and computer programs which Defendants sought to register, which were in fact deposited with the registration.

3. The Court failed to consider the generally accepted principle that where the owner of copyrights in unregistered multiple works registers a claim for copyright in a larger unit of publication consisting of those individual works, the copyright owner may bring an action for infringement of the individual works without re-registering.

4. The Court committed plain error in concluding that 17 U.S.C. § 504(c)(1) contains a *per se* requirement that no more than one statutory damage award may be predicated on a single copyright registration.

For the following reasons, the Court hereby DENIES the Motion to Reconsider.

### I. Standard of Review

Federal Rule of Civil Procedure 59(e) allows "an aggrieved party to file a motion to alter or amend a judgment within ten days of its entry." *Hutchinson v. Staton,* 994 F.2d 1076, 1081 (4th Cir.1993). "[C]ourts interpreting Rule 59(e) have recognized three grounds for amending an earlier judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law." *Id.*

In the instant case, Imageline relies on the third ground as a basis for relief. Accordingly, it must establish that there has been a clear error of law, or that manifest injustice will result from enforcement of this Court's April 5, 1999 Order. *E.E.O.C. v. Lockheed Martin Corp.,* 116 F.3d 110, 112 (4th Cir.1997). It is within the sole discretion of the Court as to

whether the granting of a motion to reconsider is appropriate. *Fener v. Hunt,* 971 F.Supp. 1025, 1034 (W.D.Va.1997). A motion to reconsider cannot be granted where the moving party simply seeks to have the Court "rethink what the Court ha[s] already thought through—rightly or wrongly." *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.,* 99 F.R.D. 99, 101 (E.D.Va. 1983).

## II. Analysis

### 1. Source Code Deposit Requirement

■ Imageline, relying on the Compendium of the Copyright Offices Practices, continues to argue that it was not required to deposit the source code in order to register the individual computer programs that generate each of the clip art images.[1] It submits that the proper interpretation of the Compendium Note is a matter of first impression for this Court and urges a reading which would require the Court to find that Imageline complied with the Copyright Office's deposit requirements.[2]

37 C.F.R. § 202.20 regulates deposits of copies and phonorecords for copyright registration. Subsection (c)(vii) requires that "[i]n cases where a computer program, database compilation . . . or the like . . . if published is published only in the form of machine-readable copies (such as magnetic tape or disks, punched cards, semiconductor chip products, or the like) other than a CD–ROM format," a deposit must be made if "the work cannot ordinarily be perceived except with the aid of a machine or device." Imageline posits that its clip art images are of such a nature that they can be visually perceived when printed out as a two-dimensional drawing. Thus, consistent with its reading of the

Compendium, Imageline posits that its deposit of the complete printout of all of the individual clip art images which it sought to register, in addition to its deposit of the magnetic tapes and CD–ROM media, clearly complied with the requirements for works that are both machine-readable computer software and visually perceptible works.

Such a broad reading of the Note would tend to defeat the purpose of the regulations requiring deposit of the source code. The Note is better seen as applying to only those situations in which the printed version and the electronic version are the functional substitutes of the other, and under the copyright law, contain the same copyrightable expression as the other. (Pls.' Mem. Opp'n at 4.) It would be ill-advised for this Court to find that the visual images and the detailed computer programs which are used to create such images are the functional equivalents of one another in light of Imageline's repeated attempts to convince the Court that there is protected expression in the electronic version of the images that is not present in the visual version. Accordingly, the Court finds that Defendants' works do not fall under the language of the Note. Controlling law requires a deposit of the source code, a requirement that Defendants' failed to adhere to in its registration.

### 2. Errors in Copyright Registration

Imageline argues that the weight of authority supports the contention that errors in an application for a copyright registration certificate do not invalidate the copyright or render the registration certificate incapable of supporting an infringement

---

**1.**

NOTE: Works fixed or published in both machine-readable and visually-perceptible form are not considered machine-readable works for purposes of deposit for registration. The appropriate deposit requirements for the visually-perceptible form apply. See section 806.12 of Chapter 800: DEPOSIT FOR REGISTRATION.

(*Compendium II* (1984), as supplemented.) Chapter 3, 324.

**2.** At the hearing on the summary judgment motions, argument was based on Circular 61 of the United States Copyright Office, which is based on 37 C.F.R. § 202.20.

action if unaccompanied by fraud. As such, Imageline contends that this Court was incorrect in ruling that certain errors made by Mr. Riddick in the copyright registration process rendered Imageline's registrations incapable of supporting an infringement action as to the individual images.[3]

■ Although it is true that inadvertent mistakes or errors in registration do not normally serve to invalidate the entire copyright, the failure to deposit any source code whatsoever is a material error which frustrated the separate purpose of the required deposit; that is, to provide the Copyright Office with sufficient material to identify the work in which the registrant claims a copyright and determine its copyrightable. Furthermore, this Court did not invalidate either the PicturePak Super-Bundle or the Master Gallery registrations in their totality. Rather, it properly determined the scope of the two registrations. As the Court has dealt with this issue in its April 5, 1999 Order and Defendants have failed to demonstrate that any clear error of law is contained therein, this claim is dismissed.

3. 17 U.S.C. § 504(c) Does Not Bar Multiple Statutory Damages Awards When One Registration Includes Multiple Works

This Court applied 17 U.S.C. § 504(c) as it is written, when it held that there should be only one award of statutory damages per registration regardless of the number of infringements or the number of products containing infringing images. *See* Memorandum Opinion April 5, 1999 at 9. As each of the two Imageline registrations is either a compilation or a derivative copyright, according to the language of § 504(c), each registration is one work for purposes of statutory damages and the Court finds no reason to reconsider its position on this issue.

## III. Conclusion

In short, the Court DENIES the Motion to Reconsider. Defendants have failed to establish any clear errors of law in this Court's decision or that any manifest injustice would result from its enforcement. It appears to the Court that the Defendants filed its brief in the hope that the Court would rethink its decision based on case law that could have been presented for review in the initial summary judgment proceedings. In that situation, a motion to reconsider will not be granted as it assumes that the Court failed to think through its decision in the first place. *Above the Belt, Inc.*, 99 F.R.D. at 101.

And it is SO ORDERED.

---

**3.** Imageline has set forth four errors made by Mr. Riddick that were stated by the Court and/or XOOM during the summary judgment proceedings. They are as follows: failure to properly denominate on the copyright application form what was being registered; failure to state correct date of first publication; in regard to the Master Gallery application, failure to register the images in their "unit of first publication;" and failure to make proper deposit for registration of computer programs. For purposes of this motion, only those errors relied on by the Court in its opinion are relevant and thus, discussed in this opinion.