323 F.3d 279
 XOOM, INCORPORATED; Aztech New Media International Corporation (Joined); Media Graphics International, Incorporated (Joined), Plaintiffs-Appellees, and
MacMillan Digital Publishing USA, a division of Prentice-Hall, Incorporated (Joined), Plaintiff,
v.
IMAGELINE, INCORPORATED; George P. Riddick, III, Defendants-Appellants, and
Compliance Services, Incorporated; Wayne K. Nystrom; Sprint Software Party Limited, Defendants.
 No. 02-1121.
 United States Court of Appeals, Fourth Circuit.
 Argued: December 3, 2002.
 Decided: March 21, 2003.
 
 COPYRIGHT MATERIAL OMITTED ARGUED: Thomas Henry Oxenham, III, Chandler, Franklin & O'Bryan, Charlottesville, Virginia; Wyatt B. Durrette, Jr., Durrette Bradshaw, P.L.C., Richmond, Virginia, for Appellants. Tobey Baroukh Marzouk, Marzouk & Parry, Washington, D.C., for Appellees.
 ON BRIEF: Bradford M. Young, Chandler, Franklin & O'Bryan, Charlottesville, Virginia, for Appellants. Thomas M. Parry, Marzouk & Parry, Washington, D.C.; Robert M. Tyler, McGuirewoods, L.L.P., Richmond, Virginia, for Appellees.
 Before MICHAEL and GREGORY, Circuit Judges, and JAMES H. MICHAEL, Jr., Senior United States District Judge for the Western District of Virginia, sitting by designation.
 Affirmed in part, reversed in part, and remanded by published opinion. Judge GREGORY wrote the opinion in which Judge MICHAEL and Senior Judge MICHAEL joined.
 OPINION
 GREGORY, Circuit Judge:
 
 
 1
 Xoom, Inc. ("Xoom") filed suit in federal district court against Imageline, Inc. ("Imageline"), seeking relief under federal and state law for alleged violations of the Copyright Act of 1976 ("Copyright Act") and interference with contractual rights. In response, Imageline filed a counterclaim alleging copyright infringement, false advertising, unfair competition, and business conspiracy. Subsequently, Xoom filed motions for partial summary judgment and summary judgment, which the district court granted. Imageline appealed to this Court. For the reasons that follow, we affirm in part and remand to the district court.
 
 I.
 
 2
 Imageline introduced PicturePak SuperBundle ("SuperBundle") on CD-ROM in 1994. SuperBundle contained 1,580 individual electronic clip-art images in CGM, WMF, and EPF formats. Imageline registered the art, text, and packing design for CD-ROM and diskette media with the United States Copyright Office ("Copyright Office").[1] The SuperBundle copyright registration became effective on March 12, 1996. The registration covered SuperBundle in its entirety; there was no specific mention of the individual clip-art images. However, Imageline deposited printed and electronic copies of each clip-art image with its registration application. The Copyright Office issued a second copyright to Imageline, effective May 3, 1996, for its database, Imageline Master Gallery ("Master Gallery"), which contained updated versions of black and white line-art images that Imageline acquired from another company in 1991 and new images based on WMF software. Master Gallery encompassed 9,618 individual clip-art images in varying file formats for use in different operating systems and user environments.[2]
 
 
 3
 Xoom began distributing a CD product called Web Clip Empire 50,000 in 1997. That product contained 50,000 software clips, including clip art images. Xoom later expanded its collection and distributed Web Clip Empire 75,000, Web Clip Empire 150,000 and Web Clip Empire 250,000 (collectively, "Web Clip Empire Products"). The Web Clip Empire Products are distributed through Xoom's website and also through third parties who market the products to end-users. Some of the images used in the Web Clip Empire Products were designed by commissioned artists, while other images were licensed to Xoom by third parties.
 
 
 4
 In 1998, Imageline sent a letter to Xoom advising that it was infringing Imageline's copyrights by: (i) sublicensing certain Imageline clip-art images to other software publishers; (ii) including certain Imageline clip-art images in Xoom's own CD software products; and (iii) making certain Imageline clip-art images available for free downloading from Xoom's website. Each Web Clip Empire Product that Xoom distributed included statements that: (i) the "web clips" were "copyright cleared"; (ii) Xoom's clip-art images were "proprietary"; and (iii) Xoom commissioned artists around the world, most on an exclusive basis, to develop web objects.
 
 
 5
 Xoom filed suit against Imageline in district court, seeking relief under both federal and state law. The complaint sought injunctive and declaratory relief based on the Copyright Act, money damages based on interference and conspiracy to interfere with contractual rights,[3] and indemnification against another defendant. Imageline filed a counterclaim against Xoom seeking relief under federal and state law for copyright infringement, false advertising and unfair competition, and business conspiracy. Xoom subsequently filed several motions for summary judgment and partial summary judgment. One of its motions for partial summary judgment, Motion No. 2, requested a dismissal or stay of Imageline's copyright claims for lack of subject matter jurisdiction or, alternatively, requested a limitation of possible statutory damages as to those claims. In a separate motion, Xoom sought summary judgment with respect to Imageline's false advertising and unfair competition claim.
 
 
 6
 In a written opinion issued on April 5, 1999, the district court granted partial summary judgment in favor of Xoom on Motion No. 2, issued a stay in the case, and limited possible statutory damages to one award per registration. On April 19, 2001, the district court granted summary judgment in favor of Xoom with respect to Imageline's counterclaims of false advertising and unfair competition. In a final order entered on January 7, 2002, the court disposed of all counts in Xoom's complaint and Imageline's counterclaim. Imageline timely filed this appeal.
 
 II.
 
 7
 A district court's award of summary judgment is reviewed de novo. See A.T. Massey Coal Co., Inc. v. Massanari, 305 F.3d 226, 235 (4th Cir.2002). To the extent there are issues of law in dispute, those questions will also be reviewed de novo. See Nelson-Salabes, Inc. v. Morningside Dev., LLC, 284 F.3d 505, 512 (4th Cir.2002).
 
 III.
 
 8
 Imageline asserts that the district court erred: (1) in finding that it did not hold copyright in the individual clip-art images or in the computer program creating the images found in SuperBundle and Master Gallery; (2) in holding that Imageline was entitled to only one award of statutory damages per work infringed; and (3) in granting summary judgment to Xoom on Imageline's false advertising and unfair competition claim. We address each of these issues in turn.
 
 A.
 
 9
 Imageline's counterclaim alleged that Xoom infringed Imageline's copyright in the individual clip-art images contained in SuperBundle and Master Gallery. The issue on appeal centers around the question of whether Imageline effectively registered its copyright in the materials it claims Xoom infringed. Copyright registration is a jurisdictional prerequisite to bringing an action for infringement under the Copyright Act. See 17 U.S.C. § 411(a) (1996); Trandes Corp. v. Guy F. Atkinson Co., 996 F.2d 655, 658 (4th Cir.1993). The district court found that Imageline had no basis for litigating claims of infringement with respect to the individual images because, as registered, the copyright claims were only in the works as a whole and not in the individual images. Imageline appeals to this Court, asserting that its copyright registration of SuperBundle and Master Gallery extended to the individual clip-art images contained in both products and in the computer programs used to create those images. We examine each of these assertions in turn.[4]
 
 1.
 
 10
 Imageline argues that it registered, and therefore owned, copyright in the individual clip-art images through its copyright registrations of SuperBundle and Master Gallery as compilations or derivative works. We decline to make a determination of whether the individual clip-art images were effectively registered through the registrations of SuperBundle and Master Gallery and find that Imageline's registration of SuperBundle and Master Gallery was sufficient to provide copyright protection to the underlying preexisting works of each.
 
 
 11
 In the instant case, Imageline created SuperBundle and Master Gallery, both compilations or derivative works, and the underlying works which those products encompassed. The Second Circuit held, in Morris v. Bus. Concepts, Inc., 259 F.3d 65, 68 (2d Cir.2001), that where an owner of a collective work also owns the copyright for a constituent part of that work, registration of the collective work is sufficient to permit an infringement action of the constituent part. Similarly, in 1997, a district court in Kansas held that registration of a derivative work is sufficient to allow an infringement claim based on the copying of material, whether newly added or contained in the underlying work. In Re Indep. Serv. Orgs. Antitrust Litig., 964 F.Supp. 1469 (D. Kan.1997); see also Foxworthy v. Custom Tees, Inc., 879 F.Supp. 1200, 1218 (N.D.Ga.1995) (holding that "preexisting materials may be subject to copyright protection under the umbrella of a compilation copyright."). We adopt this view and reverse the district court, finding that because Imageline owned copyright in SuperBundle and Master Gallery and in the underlying works of each, its registration of SuperBundle and Master Gallery was sufficient to permit an infringement action on the underlying parts, whether they be new or preexisting.[5]
 
 
 12
 Based on this holding, we do not address the issue of whether the registration of the products covered the individual clip-art images. If Xoom improperly used any copyrightable image contained in SuperBundle and Master Gallery, new or preexisting, that usage would give rise to potential statutory damages.
 
 2.
 
 13
 Imageline also asserts that it holds copyright in the computer programs that created the WMF formatted images upon which Xoom allegedly infringed.[6] In its brief to this Court, Imageline contends that because the clip-art images are perceptible when printed in a two dimensional format, it was only required to submit the visual arts registration form ("Form VA"), not the source code that is normally required to obtain copyright in a computer program. However, this contention is only partially correct. To the extent that Imageline was attempting to register copyright in the compilation of clip-art images, submission of Form VA and two complete copies of the images is sufficient for registration. See Circular 40a: Deposit Requirements for Registration of Claims to Copyright in Visual Arts Material.[7] However, for Imageline to own copyright in the computer programs creating the WMF formatted images, it must comply with the requirements that the Copyright Office sets forth in Circular 61: Copyright Registration for Computer Programs ("Circular 61").
 
 
 14
 Circular 61 requires the applicant to deposit computer source code in order to obtain copyright in computer programs. Imageline states that the creation of the WMF images was not original; rather, those images were created using commercially available products from companies such as Microsoft and Adobe. Thus, Imageline asserts that it could not, and was not required to, deposit the source code because it does not own copyright in the programs used to create the source code.
 
 
 15
 Circular 61 does waive the requirement for a deposit of source code when the code contains copyrightable authorship. However, in that situation, the applicant "must state in writing that the work as deposited in object code contains copyrightable ownership." Circular 61 at 2. Upon receipt of this written statement, the Copyright Office issues a letter to the applicant "stating that registration has been made under its rule of doubt and warning that it has not determined the existence of copyrightable authorship." Id. The record before this Court presents no evidence that Imageline submitted the requisite written statement in compliance with this requirement. Additionally, there is no evidence that the computer programs were registered because there is no letter from the Copyright Office stipulating registration in the computer programs that created the clip-art images. Therefore, to the extent Imageline claims to have properly registered copyright in the computer programs that created the clip-art images, we conclude that Imageline failed to do so and we affirm the district court's holding that Imageline does not hold copyright in those programs.
 
 B.
 
 16
 Under the Copyright Act, "[T]he copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action.... For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work." 17 U.S.C. § 504(c)(1) (1996). Imageline asserts that, contrary to the district court's finding, the language of the Copyright Act does not bar multiple awards for statutory damages when one registration includes multiple works. While Imageline's assertion is true, we find that, given the facts of the instant case, Imageline is only entitled to a maximum of two awards of statutory damages.
 
 
 17
 As we held above, infra pp. 283-284, Imageline's registration of SuperBundle and Master Gallery covered, for the purposes of this action, the products in their entirety and the underlying preexisting works contained therein in which Imageline also owned copyright. Although parts of a compilation or derivative work may be "regarded as independent works for other purposes[,]" for purposes of statutory damages, they constitute one work. H.R.Rep. No. 94-1476, at 162 (1976). Because both SuperBundle and Master Gallery can be classified as either compilations or derivative works, we find that, for purposes of determining statutory damages under Section 504(c)(1), the registrations of SuperBundle and Master Gallery constitute a total of two works (one for each registration of the compilation or derivative work).[8] Therefore, Imageline may only receive a maximum of two awards of statutory damages for copyright infringement.
 
 C.
 
 18
 In a separate motion, Imageline sought relief in the district court for violations of § 43 of the Lanham Trademark Act ("Lanham Act"). Imageline asserted that Xoom violated the Lanham Act by making statements regarding the copyright clearance of the images contained in the Web Clip Empire Products. The district court granted summary judgment in favor of Xoom. On appeal, Imageline argues that it presented sufficient evidence to warrant a finding that there is a genuine issue of material fact as to Xoom's alleged violation of the Lanham Act.[9]
 
 
 19
 To recover damages under the Lanham Act, Imageline must first establish that there has been a Lanham Act violation, then must prove actual damages and a causal link between those damages and the Lanham Act violation. 15 U.S.C. §§ 1117, 1125 (1998); Black & Decker (U.S.) Inc. v. Pro-Tech Power Inc., 26 F.Supp.2d 834, 863 (E.D.Va.1998) ("To recover damages for false advertising, a plaintiff `must prove both actual damages and a causal link between [the defendant's] violation and those damages.'" (citations omitted)). In the instant case, we assume that a Lanham Act violation has occurred, and now turn to an examination of whether Imageline has satisfied its evidentiary burden to warrant an award of damages.
 
 
 20
 In determining damages under the Lanham Act, the plaintiff bears the burden of proving a causal connection between its harms and the defendant's profits. See 15 U.S.C. § 1125 (1998); Otis Clapp & Son, Inc. v. Filmore Vitamin Co., 754 F.2d 738, 745 (7th Cir.1985) ("[T]he plaintiff may not recover if he fails to prove that the defendant's actions caused the claimed harm." (citations omitted)). Imageline's alleged damages are "loss of goodwill, diminution in the value of Imageline's artwork and of Imageline's graphic image library, and loss of income." However, the record contains no evidence that Imageline suffered actual damages. Further, even if there was evidence of actual damages, Imageline does not prove a causal link between its damages and Xoom's actions. Because there is no evidence of actual damages or a causal link between actual damages and Xoom's actions, we find that Imageline failed to satisfy its burden under 15 U.S.C. § 1117 and therefore has no sustainable claim under the Lanham Act. Accordingly, we affirm the district court's grant of summary judgement on the Lanham Act claim in favor of Xoom.
 
 IV.
 
 21
 For the foregoing reasons, we affirm in part, reverse in part, and remand to the district court for a determination of statutory damages.
 
 
 22
 
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED
 
 
 
 
 Notes:
 
 
 [1]
 Imageline noted on its registration form that "PicturePak SuperBundle was compiled from five products created in 1991: PicturePak1; PicturePak2; PicturePak3; PicturePak ValuePak 1; and Office Clips." The registration form also indicated that the material added to SuperBundle was: "New art and new text, as well as a new packaging design, for CD-ROM and diskette media."
 
 
 [2]
 Imageline noted on its registration form that SuperBundle was incorporated into Master Gallery
 
 
 [3]
 The claims for money damages were subsequently dismissed
 
 
 [4]
 In its brief to the Court, Imageline also asserts that this Court should apply the "innocent error rule" to the copyright issues in this case. The innocent error rule states "that immaterial, inadvertent errors in an application for copyright registration do not jeopardize the validity of the registration."Data Gen. Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1161 (1st Cir.1994) (citations omitted). This Court has applied the "innocent error rule" in Serv. and Training, Inc. v. Data Gen. Corp., 963 F.2d 680 (4th Cir.1992), where we found that a copyright was not invalidated because there was no evidence that appellee's failure to inform the "Copyright Office of it's software's derivative nature was intentional." Data Gen. Corp., 963 F.2d at 689. In the instant case, Imageline failed to correct problems with its application after the Copyright Office informed Imageline of the problems and gave instructions on how to correct them. Because Imageline's failure to make the necessary corrections to its application for copyright registration cannot be considered innocent, we conclude that its registration falls outside of the protection of the rule and therefore reject Imageline's claim of innocent error. We do not, however, completely invalidate Imageline's copyright registration of SuperBundle and Master Gallery. Infra pp. 6-7.
 
 
 [5]
 We do not conclude that the registration of SuperBundle and Master Gallery constituted an effective registration of the underlying preexisting works
 
 
 [6]
 The parties have not been clear on what Imageline sought to protect with respect to the creation of the clip-art images. At oral argument, Imageline acknowledged that there really are no computer programs in question here, but stated that it was seeking to copyright the images generated by the programs. To the extent that Imageline claims to have properly registered copyright in the computer programs, we address that issue here
 
 
 [7]
 There are regulations, codified at 37 C.F.R. § 202 et al. (2002), which govern copyright registration. However, because the regulations do not explicitly provide for all required elements of copyright registration, the Copyright Office issues circulars which outline the specific requirements for effective copyright registration. It is common practice for applicants to look to the circulars for guidance when completing copyright applications
 
 
 [8]
 The district court incorrectly held that "there should be only one award of statutory damages perregistration regardless of the number of infringements or the number of products containing infringing images." XOOM, Inc. v. Imageline, Inc., 93 F.Supp.2d 688, 693 (E.D.Va.1999) (emphasis added). Imageline is entitled to one award of statutory damages per work infringed because SuperBundle and Master Gallery are compilations or derivative works in which Imageline holds copyrights, not because they are single registrations.
 
 
 [9]
 Imageline asks this court to adopt the Reverse Passing Off ("RPO") theory, recognized by other circuits as a false designation of origin actionable under the Lanham ActSee Waldman Publishing Corp. v. Landoll, Inc., 43 F.3d 775, 780 (2d Cir.1994). Because the district court's commentary on this issue was dicta, we find that the issue was not properly before us on appeal and decline to address it here.