09-5202-cv
Kwan v. Schlein

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2010

(Argued: October 14, 2010                          Decided: January 25, 2011)

Docket No. 09-5205-cv

_____

SHIRLEY Y. KWAN,

       *Plaintiff-Counter-Defendant-Appellant*,

       v.

ALAN M. SCHLEIN, BUSINESS RESOURCE BUREAU, INC.,

       *Defendants-Counter-Claimants-Appellees*,

FACTS ON DEMAND PRESS, MICHAEL SANKEY, BRB PUBLICATIONS, JANE/JOHN
DOE, CARL R. ERNST, J.J. NEWBY, SCHLEIN NEWS BUREAU, PETER J. WEBER,

       *Defendants-Appellees*.

_____

Before: KEARSE, POOLER, and WESLEY, *Circuit Judges*.

Appeal from two orders of the United States District Court for the Southern District of
New York (Stein, *J.*). One order, entered on July 16, 2009, granted summary judgment on
Appellant's claim for copyright infringement on the ground that the claim was time-barred. The
other, entered on November 23, 2009, dismissed without prejudice Appellees' counterclaims. We
hold that a time-barred ownership claim will bar a claim for copyright infringement where, as
here, the infringement claim cannot be decided without adjudication of a genuine dispute as to the
plaintiff's ownership of the copyright. Accordingly, the district court did not err in granting
summary judgment on this ground, and because we find Appellant's remaining claims to be
without merit, we affirm.

       **AFFIRMED**.

———————————

JEFFREY SONNABEND, SonnabendLaw, Brooklyn, NY,
*for Plaintiff-Counter-Defendant-Appellant*.

LAWRENCE D. BERNFELD, Graubard Miller, New York, NY,
Scott Christopher Patton, McNamee, Lochnew, Titus & Williams,
P.C., Albany, NY, *for Defendant-Counter-Claimants-Appellees* and
*Defendants-Appellees*.

POOLER, Circuit Judge:

Appeal from two orders of the United States District Court for the Southern District of New York (Stein, *J.*). One order, entered on July 16, 2009, granted summary judgment on Appellant's claim for copyright infringement on the ground that the claim was time-barred. The other, entered on November 23, 2009, dismissed without prejudice Appellees' counterclaims. We hold that a time-barred ownership claim will bar a claim for copyright infringement where, as here, the infringement claim cannot be decided without adjudication of a genuine dispute as to the plaintiff's ownership of the copyright. Accordingly, the district court did not err in granting summary judgment on this ground, and because we find Appellant's remaining claims to be without merit, we affirm.

## BACKGROUND

In early 1998, Business Resources Bureau, Inc. (d/b/a BRB Publications and Facts On Demand Press, hereinafter "BRB")—a publisher of books and websites used for locating public records—approached Alan M. Schlein regarding a concept for a book on the use of the internet. Schlein agreed to author the book, which was to be called *Find It Online* ("FIOL").

In August 1998, BRB hired Shirley Y. Kwan, at Schlein's request, to perform 100 hours of editing. An email sent from Michael L. Sankey, CEO of BRB, to Kwan, on August 18, 1998, confirmed the arrangement and noted that Kwan would "be given a credit or byline on the title page as editor on the project." When Kwan had billed the 100 hours for which BRB had agreed

to pay, Schlein advised BRB that he wanted Kwan to continue to provide editorial assistance for FIOL. BRB, Schlein and Kwan agreed that Kwan would continue editing the book, and would be compensated based upon a percentage of Schlein's royalties. The rate amounted to 2.5% of the book's royalties for the first 5000 copies sold, and 3% thereafter.

Pursuant to their editing agreement, Schlein would prepare first drafts of FIOL chapters and send them to Kwan for editing. Kwan would comment on these chapters and then return them to Schlein for further work. After Schlein had revised the chapters based upon Kwan's comments, he would return them to her for a second round of editing.

On December 14, 1998, as they approached the publication day for FIOL, Sankey sent an email to Kwan and Schlein about cover billing, which stated in relevant part:

> ** On cover, we were planning to put both names - AMS [Schlein] and SKK [Kwan]...Alan has brought it up that he may want something different. Need to have the two of you to agree on how you want your names listed
> AMS and SKK
> AMS with SKK
> ???? need to know this week

That same day, Schlein responded to Sankey, but not Kwan, with the following:

> As we discussed, I want the authorship to read as follows
> By Alan M. Schlein   Edited by Shirley ....
> If this is not the way you plan to do the book I would like to talk to you about it immediately!!
> Please contact me ASAP Tuesday if you have any plans otherwise.
> your offering a co-authorship to Shirley has put me in an awkward position. She was brought in as a contract editor, and while I appreciate all her significant efforts, it was her and my agreement to have her listed as an editor.

On December 15, Kwan responded to Sankey's email, explaining that: "After due consideration, I've decided to request the following title credit: by Alan Schlein with Shirley Kwan Kisaichi," because "[e]ssentially, I have ghostwritten this book." Two days later, an attorney sent Sankey a letter on Kwan's behalf demanding that she be credited as requested—"by Alan Schlein with

Shirley Kwan Kisaichi," not "edited by Shirley Kwan Kisaichi."

Notwithstanding the above communications from Kwan and her attorney, the first edition of FIOL was published in January 1999, with Schlein listed as author and Kwan listed as editor. Schlein and BRB jointly registered their copyright in FIOL on January 15, 1999. Kwan received royalties from the publication of FIOL in several installments beginning in May 1999. She cashed the first of these checks in September 1999.

BRB published a second edition of FIOL in December 1999, a third edition in July 2002, and a fourth edition in August 2004. BRB and Schlein registered their copyrights to these later editions in the ordinary course.

Between December 1998 and January 2005, there appear to have been no communications from Kwan to Sankey or Schlein regarding her FIOL cover credit. In a May 23, 2002 letter, BRB notified Kwan that BRB was in the process of finalizing the Third Edition of FIOL and that BRB would not be paying Kwan royalties for any edition after the Second Edition, which had "been completely re-written." Then, on January 14, 2005, Kwan filed this lawsuit alleging, inter alia, that BRB infringed her copyright in FIOL. The next month, Kwan filed a copyright registration for FIOL, identifying herself as a co-author with Schlein, a filing she later "corrected," when she amended the registration to identify herself as sole author.

BRB and Schlein filed certain counterclaims in response to Kwan's complaint, requesting, inter alia: (1) declaratory judgment finding that Kwan's copyright registrations were invalid and that she had no ownership interest in FIOL, and (2) a permanent injunction preventing Kwan from making any future claims of copyright or ownership in the book.

On January 30, 2009, Schlein moved for summary judgment on his counterclaims, and on February 2, 2009, BRB also moved for summary judgment. BRB's motion requested judgment on Kwan's claims as well as its own counterclaims. The district court granted summary judgment

to BRB on Kwan's copyright claim, but denied judgment on the above counterclaims. The district court reasoned that Kwan's copyright claims were time-barred because "the core issue [was] ownership," not infringement, and therefore, the statute of limitations began to run "when the plaintiff first knew the defendant disputed ownership or used the material at issue."

In concluding that her claim was time-barred, the district court first noted that Kwan, through her then-counsel, sent BRB a letter in December 1998 in which she "clearly claimed co-authorship of [FIOL]." In that letter, the court explained, Kwan referenced prior discussions with BRB on the issue and specifically objected to being identified as an editor in the upcoming publication. The first edition of FIOL, which identified Kwan as only an editor, was then published in January 1999. BRB first issued Kwan a check for royalties from this edition in May 1999, which Kwan cashed in September 1999. From these facts, the district court concluded that Kwan knew that BRB and Schlein disputed her rights in FIOL no later than September 1999, and therefore, her claims were time-barred by a term of years when she filed suit.

On November 3, 2009, BRB and Schlein moved pursuant to Federal Rule of Civil Procedure 41(a) for an order permitting them to dismiss their counterclaims voluntarily, without prejudice to reinstatement or reassertion "in the event . . . Kwan . . . were to (a) prevail on an appeal" from the district court's grant of summary judgment against her, "(b) commence a new action against Schlein or [BRB]" relating to FIOL, or (c) take actions in violation of BRB's and Schlein's copyright interests in FIOL. The court granted the motion, finding that it would cause Kwan no legal prejudice.

For the reasons set forth below, we affirm the grant of summary judgment to BRB on Kwan's copyright claim and the order permitting the voluntary dismissal of defendants' counterclaims.

5

## DISCUSSION

### I.  Standard of Review

We review the grant of summary judgment de novo, drawing all factual inferences in favor of the party against whom summary judgment is sought.  *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 107 (2d Cir. 2008).  Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed R. Civ. P. 56(a); *accord Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).

### II.  Copyright Statute of Limitations

Civil actions under the Copyright Act must be brought "within three years after the claim has accrued."  17 U.S.C. § 507(b).  An ownership claim accrues only once, when "a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right."  *Stone v. Williams*, 970 F.2d 1043, 1048 (2d Cir. 1992).  Under this rubric, any number of events can trigger the accrual of an ownership claim, including "[a]n express assertion of sole authorship or ownership."  *Netzer v. Continuity Graphic Assocs., Inc.*, 963 F. Supp. 1308, 1315 (S.D.N.Y. 1997) (citing *Zuill v. Shanahan*, 80 F.3d 1366, 1370 (9th Cir. 1996)); *accord Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir. 1996) (citing *Stone*, 970 F.2d at 1048).  By contrast, an infringement action may be commenced within three years of *any* infringing act, regardless of any prior acts of infringement; we have applied the three-year limitations period to bar only recovery for infringing acts occurring outside the three-year period.  *See Merchant*, 92 F.3d at 57 n.8.

Here, BRB and Schlein rejected Kwan's express assertion of authorship in December 1998, and then published the first edition of FIOL, which did not list Kwan as an author, in January 1999.  On the facts of this case, there is no question that Kwan was aware of the dispute regarding her rights to FIOL by January 1999, when the first edition was published, and therefore,

6

her ownership claim accrued at that time.  Because Kwan did not file suit until December 2004, more than three years after the publication of the first edition—and indeed, more than three years after publication of the second edition—any ownership claim relating to FIOL is untimely.

Kwan acknowledges that any claims relating to the first and second editions of FIOL, both of which were published in 1999, are time-barred regardless of how they are characterized. Kwan argues, however, that she has two timely causes of action for copyright infringement relating to the publication of the third and fourth editions of FIOL, because they were published less than three years before Kwan filed suit.  We disagree.

To maintain an action for infringement, a plaintiff must establish "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991).  In many infringement cases, the first element (ownership) is not in dispute.  For example, when Bright Tunes sued former Beatles guitarist George Harrison for infringing the copyright in "He's So Fine," there was no question that Bright Tunes owned the copyright to the song.  *See Bright Tunes Music Corp. v. Harrisongs Music, Ltd.*, 420 F. Supp. 177 (S.D.N.Y. 1976).  The issue was whether, in creating "My Sweet Lord," Harrison had copied too much from "He's So Fine."  *See id.* at 180-81.  Having found that the two songs were "virtually identical," the district court concluded that he had.  *Id.*

Unlike *Bright Tunes*, the dispute over FIOL does not involve the nature, extent or scope, of copying, and therefore, ownership forms the backbone of the "infringement" claim at issue here.  That is, the dispute involves who wrote FIOL in the first place—whether Kwan's editorial contributions to FIOL were significant enough to qualify her as the author and therefore owner of the copyright in FIOL.  Indeed, because coauthors cannot sue one another for copyright infringement, *see Weissmann v. Freeman,* 868 F.2d 1313, 1318 (2d Cir. 1989), Kwan cannot recover unless she was the sole author of FIOL.

7

When confronted with analogous facts, a number of district courts in this Circuit have held that "infringement" claims like Kwan's are time-barred as a matter of law where, as here, the underlying ownership claim is time-barred. In *Big East Entm't, Inc. v. Zomba Enters., Inc.*, for example, a court held plaintiff's infringement claim time-barred because it was based "entirely upon its alleged ownership of [musical] compositions," which plaintiff had failed to litigate for more than a decade. 453 F. Supp. 2d 788, 796 (S.D.N.Y. 2006), *aff'd on other grounds*, 259 F. App'x 413 (2d Cir. 2008). The court explained that "the statute of limitations cannot be defeated by portraying an action as one for infringement when copyright ownership rights are the true matter at issue." *Id.* at 795. Likewise, in *Ortiz v. Guitan Bros. Music Inc.*, an action relating to a series of musical works to be used as a movie score, a court held copyright claims time-barred because plaintiff was aware of a dispute regarding ownership of the copyrights in question more than three years before he filed suit. No. 07 Civ. 3897, 2008 WL 4449314 (S.D.N.Y. Sept. 29, 2008). The court wrote that, "[w]here, as here, a plaintiff's copyright ownership is not conceded (and, in fact, the defendant holds a prior copyright registration certificate for the disputed work), copyright ownership, and not infringement, is the gravamen of the plaintiff's claim to which the statute of limitations is applied." *Id.* at *3.

Two of our sister circuits have adopted similar formulations. *See Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 389-90 (6th Cir. 2007) ("When claims for both infringement and ownership are alleged, the infringement claim is timely only if the corresponding ownership claim is also timely."); *Zuill v. Shanahan*, 80 F.3d 1366, 1371 (9th Cir. 1996) ("Mr. Shanahan's plain and express repudiation in 1986 and 1987 of any claim to co-ownership caused Mr. Zuill's and Mr. Rossi's action, if any, to accrue, so the district court properly found the action to be barred by the statute of limitations. . . . Creation, rather than infringement, was the gravamen of plaintiffs' co-ownership claim, so the claim did not accrue

8

upon subsequent publication."). We hold that the same principles govern the outcome of this case. Where, as here, the ownership claim is time-barred, and ownership is the dispositive issue, any attendant infringement claims must fail.

### III. The Counterclaims

Federal Rule of Civil Procedure 41(a)(2) provides that, absent agreement between the parties, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." We review for abuse of discretion the district court's decision to dismiss BRB and Schlein's counterclaims without prejudice. *See Camilli v. Grimes*, 436 F.3d 120, 123 (2d Cir. 2006).

In *Camilli v. Grimes*, we noted that "[t]wo lines of authority have developed with respect to the circumstances under which a dismissal without prejudice might be improper." *Id.* at 123. The first, we explained, "indicates that such a dismissal would be improper if 'the defendant would suffer some plain legal prejudice other than the mere prospect of a second lawsuit.'" *Id.* at 123 (quoting *Cone v. West Virginia Pulp & Paper Co.*, 330 U.S. 212, 217 (1947), and citing *Jones v. SEC*, 298 U.S. 1, 19 (1936)). The second "indicates that the test for dismissal without prejudice involves consideration of various factors, known as the *Zagano* factors." *Id.* (citing *D'Alto v. Dahon California, Inc.*, 100 F.3d 281, 283 (2d Cir. 1996), and *Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990)). The *Zagano* factors include: "(1) the plaintiff's diligence in bringing the motion, (2) any undue vexatiousness on the plaintiff's part, (3) the extent to which the suit has progressed, including the defendant's efforts and expense in preparation for trial, (4) the duplicative expense of relitigation, and (5) the adequacy of the plaintiff's explanation for the need to dismiss." *Id.* These factors are not necessarily exhaustive and no one of them, singly or in combination with another, is dispositive.

The *Camilli* court explained that the *Zagano* factors bear "little, if any," relevance where a

dismissal without prejudice conditions future litigation on a defendant's actions. 436 F.3d at 123. The plaintiff in *Camilli*, like the defendants here, was "not given the unfettered opportunity to renew her claims against Grimes." *Id.* Rather, she could "reassert her claims only in defense of any related suit that Grimes might bring against her." *Id.* Thus, as we explained, defendant "not Camilli was in control of whether Camilli's claims are ever reasserted." *Id.*

The dismissal of BRB and Schlein's counterclaims without prejudice presents a situation analogous to *Camilli* because BRB and Schlein may renew their counterclaims only if Kwan: (1) prevails on appeal, (2) commences a new action against them relating to FIOL, or (3) takes actions that violate BRB and Schlein's copyright interests in FIOL. BRB and Schlein "made it clear" to the district court "that their counterclaims were simply asserted defensively and that they have no intention of pursuing those counterclaims independent of a reversal by the Second Circuit . . . or any action by Kwan to continue to pursue the issues raised in this litigation."

Under these circumstances, we conclude that the district court did not abuse its discretion in dismissing the counterclaims based solely upon the court's finding that Kwan would suffer no legal prejudice from the granting of the motion. As we explained in *Camilli*, "where no possibility of relitigation at the instance solely of the plaintiff exists," the only question a court *must* answer is whether its "qualified dismissal without prejudice [would result] in 'some plain legal prejudice'" to defendant. 436 F.3d at 123. The district court answered that question in the negative, and we agree. In contending that the dismissal of the counterclaims causes her "legal prejudice," Kwan argues that their dismissal forecloses a determination of her right of ownership. But as her complaint has been dismissed with prejudice, it has already been determined that she has no such right.

Moreover, Kwan has failed to show that consideration of the *Zagano* factors would have altered the outcome on the motion. Kwan has discussed only the first, third and fifth

10

*Zagano* factors. We view those factors as adverse to Kwan. For example, she criticizes defendants' explanation for seeking dismissal of the counterclaim and argues that defendants, in making that motion, were "anything but diligent" because defendants waited until discovery was complete and did not so move until the court had denied their motions for summary judgment on the counterclaims. But Kwan has not pointed to any discovery that did not bear on her own claims, and the order that denied summary judgment on the counterclaims granted summary judgment dismissing Kwan's complaint, thereby foreclosing her claim of copyright ownership. Defendants' view that the judgment against Kwan on her claims made the present pursuit of their counterclaims unnecessary is entirely creditable. Further, we see no merit in the argument that defendants were dilatory. The order dismissing Kwan's claims was entered in July 2009, and Kwan and the court surely were alerted to defendants' desire to move for dismissal of the counterclaims at least as early as October 23, 2009, for on that date the court set a deadline for defendants to make such a motion. We see no indication in the court records that any wasteful litigation efforts were undertaken in the interim, other than Kwan's own premature attempt in August 2009 to appeal what was not a final judgment.

We also conclude that the second and fourth factors do not weigh in Kwan's favor. Kwan has not shown that Schlein and BRB have exhibited any undue vexatiousness, or that any expense of relitigation would be duplicative. Further, even if we were to accept Kwan's assertion that the counterclaims are "trial ready," and that BRB and Schlein were less than diligent in bringing their motion to dismiss the counterclaims, because they waited approximately four months after the district court granted summary judgment against Kwan on her copyright claim to file their motion, BRB and Schlein's explanation for the need to dismiss the counterclaims is more than adequate. BRB and Schlein represented, and the district court was entitled to accept, that the counterclaims were purely defensive, asserted only in response to Kwan's lawsuit. Once

11

summary judgment was granted ending Kwan's lawsuit, BRB and Schlein had no reason to continue to pursue their claims. The district court's conditional dismissal of the counterclaims took this explanation into account and we find no error therein.

We have considered Appellant's remaining contentions and conclude that they are without merit.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the order of the district court.