14-3106-cv
Simmons v. Stanberry

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2014

(Argued: June 19, 2015                    Decided: January 15, 2016)

Docket No. 14-3106-cv

-----------------------------------------------------------X

TYRONE SIMMONS,

*Plaintiff-Appellant*,

v.

WILLIAM C. STANBERRY, JR., AKA APEX,
CURTIS JACKSON, AKA 50 CENT,
UNIVERSAL MUSIC GROUP RECORDINGS,
INC., INTERSCOPE RECORDS, APEX
PRODUCTIONS, LLC, DBA APEX
PRODUCTIONZ, AFTERMATH
ENTERTAINMENT, SHADY RECORDS, G-
UNIT RECORDS, JOHN DOES 1-20, fictitious
persons, and XYZ Corporations, fictitious entities,

*Defendant-Appellees.*[*]

-----------------------------------------------------------X

Before: WINTER, LEVAL, and RAGGI, *Circuit Judges*:

Plaintiff Tyrone Simmons appeals from a judgment of the United States District Court for the Eastern District of New York (Irizarry, *J.*) dismissing his suit on grounds of untimeliness. Simmons, who is a writer and performer of hip-hop music, alleges that in February 2006 he purchased an exclusive license to a hip-hop beat created by Defendant William C. Stanberry, Jr., and that Stanberry later sold the same beat to Defendant Curtis Jackson, a well-known rapper who then used the beat in his 2007 single "I Get Money." Because Simmons was aware of the alleged dispute over the right to use the beat and of the alleged infringement of Simmons's

---

[*] The Clerk of Court is directed to amend the case caption as set forth above.

1

rights, and yet waited more than three years to file suit, we affirm the district court's conclusion that Simmons's suit is time-barred.

| For Plaintiff-Appellant: | GERALD A. MARKS (Louis D. Tambaro, *on the brief*), Marks & Klein, LLP, Red Bank, New Jersey. |
| --- | --- |
| For Defendant-Appellees: | PETER D. RAYMOND (Geoffrey G. Young, *on the brief*), Reed Smith LLP, New York, New York, *for* Universal Media Group Recordings, Inc., Interscope Records, Aftermath Entertainment, and Shady Records; |
| | DAVID L. LEICHTMAN, Robins Kaplan LLP, New York, New York, *for* Curtis Jackson and G-Unit Records. |

PER CURIAM:

Plaintiff Tyrone Simmons appeals from a judgment of the United States District Court for the Eastern District of New York (Irizarry, *J.*) dismissing his suit on grounds of untimeliness. Simmons, who is a writer and performer of hip-hop music, brought this suit against hip-hop producer William C. Stanberry, Jr., the well-known rapper Curtis Jackson (who performs under the name 50 Cent), and various corporate entities involved in the production and distribution of the 2007 song "I Get Money," which was produced by Stanberry and recorded by Jackson.

Simmons alleges that in February 2006 he purchased from Stanberry an exclusive license to a beat and that Simmons therefore owns the right to bar all others—including Stanberry, Jackson, and the related corporate entities—from using the beat. He goes on to allege that when Jackson expressed interest in the beat, Stanberry—despite having sold the exclusive rights in the beat to Simmons—arranged with Jackson that they would collaborate in the production of a Jackson song employing the beat. Simmons further alleges that in May 2007 Stanberry attempted to repudiate Simmons's license by email, informing Simmons with apologies that he "no longer had exclusive (or any) rights to the Beat." Pl. App'x. at 22. Simmons alleges that Jackson's

2

recording of his song employing the beat was publicly released in the summer of 2007, enjoyed immediate success, and continued to earn revenues in derogation of Simmons's exclusive rights up until the time Simmons brought suit in December 2010. Despite Simmons's evident awareness of Stanberry's repudiation of the sale to him, of Stanberry's agreement with Jackson for the exploitation of the beat, and of their release of the allegedly infringing song, Simmons did not file suit until more than three years after the song had been released in disavowal of Simmons's claim of rights.

The defendants moved to dismiss the suit for untimeliness. Citing *Kwan v. Schlein*, 634 F.3d 224 (2d Cir. 2011), the district court granted the motion and dismissed the suit. Plaintiff brought this appeal. We affirm. Our decision in *Kwan* precludes this action.

In that case the plaintiff Kwan had been hired by the defendant Schlein to edit a book written by Schlein, entitled *Find It Online* ("FIOL)," which was to be published by the defendant Business Resources Bureau, Inc. ("BRB"). As publication date approached, the plaintiff told the defendants that she believed her contributions to the book were sufficiently extensive to entitle her to be credited as a co-author, rather than as editor. She demanded recognition as co-author. *Kwan*, 634 F.3d at 226-27. The defendants ignored her demand and published the book listing Schlein as the sole author, while crediting the plaintiff as editor. Nearly six years after the initial publication, the plaintiff brought suit against Schlein and BRB, alleging infringement of her copyright interest. The defendants had continued selling the book throughout the intervening period. *Id.* at 227-30.

Our court ruled that, notwithstanding the occurrence of allegedly infringing acts within three years of filing the action, the suit was nonetheless barred by the Copyright Act's three-year

3

statute of limitations, 17 U.S.C. § 507(b), because the plaintiff, although aware of the defendants' acts of infringement done in rejection of plaintiff's claim of a copyright interest, had waited more than three years to sue. *Id.* at 228-30. We explained:

> Here, BRB and Schlein rejected Kwan's express assertion of authorship in December 1998, and then published the first edition of FIOL, which did not list Kwan as an author, in January 1999. On the facts of this case, there is no question that Kwan was aware of the dispute regarding her rights to FIOL by January 1999, when the first edition was published, and therefore, her ownership claim accrued at that time. Because Kwan did not file suit until December 2004, more than three years after the publication of the first edition . . . any ownership claim relating to FIOL is untimely.

*Id.* at 229. Where the plaintiff's claims were rooted in her contested assertion of an ownership interest in the copyright, and that claim of ownership interest was time-barred because of the plaintiff's delay in suing, the plaintiff could not resuscitate the untimely claim by relying on claims against the defendants' continuing course of infringing publication after the plaintiff's ownership claim became time-barred. We wrote, "Where . . . the ownership claim is time-barred, and ownership is the dispositive issue, any attendant infringement claims must fail." *Id*. at 230.

*Kwan* controls this case. As in *Kwan*, more than three years prior to Simmons's filing of his suit, Stanberry had made clear to him that he rejected Simmons's assertion of an interest in the copyright and had gone on to exploit the copyrighted work in a manner of which Simmons was on notice. Simmons's assertion of his claim of a copyright interest was therefore time-barred. As in *Kwan*, furthermore, he could not revive the time-barred claim of ownership of a copyright interest by relying on the defendants' continued exploitation of the copyright within three years of his filing suit.

4

Simmons argues that his case is distinguishable from *Kwan* in that he does not claim to be an *owner* of the copyright but rather an exclusive licensee. The distinction is not material for these purposes. An exclusive licensee as to all rights to a work effectively exercises the rights that flow from ownership. The Copyright Act recognizes that an exclusive license is effectively a transfer of ownership over the rights licensed. The Act includes exclusive licenses among the list of transactions that can effect a "transfer of copyright ownership," 17 U.S.C. § 101, and exclusive licensees stand in the shoes of creators for enforcement purposes, 17 U.S.C. § 201(d). We can see no reason why the statute of limitations should apply differently in Simmons's case than in Kwan's.[1]

## CONCLUSION

The judgment of the district court dismissing the complaint is **AFFIRMED**.

---

[1] *Morris v. Business Concepts, Inc.*, 259 F.3d 65, 70 (2d Cir. 2001) *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010), on which Plaintiff relies to distinguish between owners and licensees, is inapposite. *Morris* dealt with the question of whether an exclusive licensee's registration of a collective work sufficed to register a divisible part of the work, in which the original author retained ownership. That issue is not relevant to the question whether a dispute over an exclusive license should be treated the same as a dispute over ownership of a copyright.