UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2017

(Argued: January 24, 2018          Decided: June 6, 2018)

Docket No. 17-1549-cv

—————————————————

John Wilson, Charles Still, Terrance Stubbs,

*Plaintiffs-Appellants*,

v.

Dynatone Publishing Company, UMG Recordings, Inc., Unichappell Music, Inc.,

*Defendants-Appellees*.

—————————————————

Before:

   PIERRE N. LEVAL, GUIDO CALABRESI and JOSE A. CABRANES, *Circuit Judges*.

   Plaintiffs appeal from the dismissal of their suit by the United States District Court for the Southern District of New York (Paul A. Engelmayer, *District Judge*). Plaintiffs John Wilson, Charles Still, and Terrance Stubbs are former members of a musical group called "Sly Slick & Wicked." They claim authorship of, and ownership of the renewal term copyrights in, the musical composition and sound recording of a song entitled "Sho' Nuff," pursuant to 17 U.S.C. § 304(a)(3)(A) & (B). Plaintiffs brought this action alleging that Defendants, Dynatone Publishing Company, UMG Recordings, Inc., and Unichappell Music, Inc., collected royalties from the sampling of Sho' Nuff in 2013, during the renewal terms, and that Plaintiffs were entitled to those royalty payments. The district court granted Defendants' Rule 12(b)(6) motion to dismiss for untimeliness. We AFFIRM the dismissal of Plaintiffs' state law

accounting claim and otherwise VACATE the judgment and REMAND to the district court.

LITA ROSARIO, PLLC,
Washington, DC, *for Plaintiffs-Appellants*.


ROBERT A. JACOBS
MANATT, PHELPS & PHILLIPS LLP
Los Angeles, CA, *for Defendants-
Appellees*.

LEVAL, *Circuit Judge*:

Plaintiffs, John Wilson, Charles Still, and Terrance Stubbs, appeal from the judgment of the United States District Court for the Southern District of New York (Paul A. Engelmayer, *J*.) dismissing their copyright claims for failure to state a claim because of untimeliness. Plaintiffs are former members of the musical performance group called "Sly Slick & Wicked." They claim authorship of, and ownership of the renewal term copyrights in, the musical composition and sound recording of a song entitled "Sho' Nuff" ("Sho' Nuff" or the "Song"). They allege that Defendants, Dynatone Publishing Company, UMG Recordings, Inc., and Unichappell Music, Inc., collected royalties from the sampling of Sho' Nuff in popular songs by Justin Timberlake and J. Cole in 2013 during the renewal terms, and that they, rather than the Defendants, were entitled to these royalty payments. The district court granted

Defendants' motion to dismiss pursuant to Rule 12(b)(6). The court reasoned that the claims were time-barred because the Defendants had repudiated Plaintiffs' claims of copyright ownership many years earlier, during the initial copyright terms. The district court erred in concluding that a repudiation of Plaintiffs' claims with respect to the original terms constitutes a repudiation of the renewal terms. We affirm the dismissal of Plaintiffs' state law accounting claim for failure to allege a fiduciary duty and remand for further proceedings as to Plaintiffs' renewal term copyright claims.

BACKGROUND

I.    Facts

The Amended Complaint alleges the following facts, set forth here in the light most favorable to Plaintiffs.

1. *The Sho' Nuff Musical Composition*

a.    Original Term Claims: Plaintiff Wilson wrote the Sho' Nuff musical composition prior to April 1973 while traveling with Sly Slick & Wicked. On May 12, 1973, Plaintiffs filed a registration for the Song with the United States Copyright Office listing the three Plaintiffs as authors. Thereafter, two others asserted claims to the composition. On July 9, 1973, a

musical promoter named Edward Perrell filed a registration with Broadcast Music Inc. ("BMI"), a membership organization that collects royalties on behalf of songwriters and music publishers, listing Perrell Music, Belinda Music, and Dynatone Music as the publishers. Approximately one year later on June 26, 1974, Chappell & Co., predecessor-in-interest to Defendant-Appellee Unichappell Music, Inc., filed a Copyright Office registration of the composition, listing Plaintiffs as the writers and Dynatone Publishing Company as the claimant.

b. Renewal Term Claims: On November 19, 2015, Plaintiffs filed a renewal registration in the Copyright Office asserting ownership of the renewal term for the composition. They had not executed any written agreements with People Records, Belinda Music, or Dynatone Publishing transferring interests in the renewal term copyright for the composition.

2. *The Sho' Nuff Sound Recording*

Shortly after Plaintiff Wilson wrote Sho' Nuff, Perrell encouraged Plaintiffs to record the Song. As Sly Slick & Wicked, they made a sound recording of Sho' Nuff circa April 1973. Perrell and Plaintiffs then met with representatives from People Records, a record label owned by James Brown.

Perrell and Brown modified the recording by "sweetening" through addition of strings and bells. Around June 28, 1973, People Records released a commercial recording of Plaintiffs' recording of Sho' Nuff, with the sweetening added by Perrell and Brown. The record label listed Perrell and Brown as the producers and Polydor, successor-in-interest to People Records and predecessor-in-interest to Defendant-Appellee Universal Music Group, Inc. ("UMG"), as copyright owner for the sound recording.

    a.    Original Term Claims: On or about June 26, 1973, Polydor registered a copyright in the Sho' Nuff sound recording, claiming sole ownership and asserting that the recording was a work made for hire. The registration identified Polydor as the "Employer for Hire."

    b.    Renewal Term Claims: According to the Amended Complaint, Plaintiffs never executed any written agreements with either Perrell or People Records that included a "work for hire" provision, and never transferred their renewal term copyrights to either Perrell or People Records. Defendant UMG registered a renewal term copyright in the sound recording with the Copyright Office on December 21, 2001.

*3. The Sho' Nuff Samplings*

Nearly forty years after People Records released the Sho' Nuff sound recording, Sho' Nuff attained new commercial life through a practice known as "sampling." On or about January 15, 2013, the multi-platinum and Grammy award-winning musician Justin Timberlake inserted a sample from the Sho' Nuff sound recording (with Plaintiffs' vocal performances) in his own successful commercial release of a new single, "Suit & Tie." Suit & Tie sold over 3,000,000 units in the United States alone, achieved platinum status in numerous other countries, and received more than 92,000,000 YouTube views.

On or about June 2013, another platinum-selling recording artist J. Cole released a new single, "Chaining Day," which included a sample from the Sho' Nuff master recording.

II.    Proceedings Below

On January 6, 2016, Plaintiffs brought this action[1] against Dynatone, UMG, Unichappell, Edward Perrell d/b/a Perrell Music, BMI, and Anheuser-

---

[1] The original Complaint listed Wilson and Still as the Plaintiffs. The Amended Complaint added Stubbs as the third Plaintiff.

Busch International, Inc. in the United States District Court for the Southern District of New York.

The Amended Complaint sought a declaratory judgment that Plaintiffs own the renewal term copyright for the Sho' Nuff composition pursuant to 17 U.S.C. § 304(a); an accounting and award of earnings collected from the commercial exploitation of the composition between January 6, 2013 and January 6, 2016; and a declaratory judgment that the June 26, 1974 copyright registration in the composition by Defendant Unichappell's predecessor is invalid.

The Amended Complaint also sought a declaratory judgment that Plaintiffs, along with Perrell and UMG, co-own the renewal term copyright in the Sho' Nuff sound recording pursuant to 17 U.S.C. § 304(a); and an accounting and award of earnings collected from the commercial exploitation of the sound recording between January 6, 2013, and January 6, 2016.

Plaintiffs reached settlement agreements with Perrell, BMI, and Anheuser-Busch International, Inc. The remaining Defendants moved to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). The district court granted Defendants' motion in its entirety. *Wilson v. Dynatone Publ. Co.,*

*UMG Recordings, and Unichappell Music*, No. 16 Civ. 00104(PAE), 2017 WL 1330336 (S.D.N.Y. April 10, 2017). Judgment was entered in favor of Defendants on April 11, 2017. Plaintiffs timely filed notice of this appeal.

DISCUSSION

On appeal, Plaintiffs contend that the district court erred in granting Rule 12(b)(6) dismissal of (1) their claims to renewal term copyrights in the composition and sound recording of Sho' Nuff and (2) their accounting claims. They do not challenge the district court's dismissal of their claims to the original term copyrights or their demand for a declaratory judgment invalidating the June 26, 1974 copyright registration for the Sho' Nuff composition by Unichappell's predecessor, Chappell & Co.

In ruling on a Rule 12(b)(6) motion, the court must consider only those facts alleged in the complaint, and must draw all reasonable inferences in favor of the plaintiff. *See Doe v. Columbia University*, 831 F.3d 46, 48 (2d Cir. 2016).

I.      Renewal Term Claims

Section 304 of the Copyright Act applies to "[c]opyrights in their first term on January 1, 1978." 17 U.S.C. § 304(a). It establishes that authors who

8

are still living when the original 28-year copyright term expires "shall be entitled to a renewal and extension of the copyright in such work for a further term of 67 years." 17 U.S.C. § 304(a)(1)(C). If no application is made to register the renewal copyright, then the renewal term vests automatically in the living author. 17 U.S.C. § 304(a)(2)(B)(ii). If a registration application is made within one year of the expiration of the original term, then the renewal term will vest "in the proprietor of the copyright who is entitled to claim the renewal of copyright at the time the application is made." 17 U.S.C. § 304(a)(2)(B)(i).

Congress intended the renewal term to give authors an opportunity to renegotiate with patrons after their work has been tested in the market. *See Stewart v. Abend*, 495 U.S. 207, 218-19 (1990). Accordingly, the renewal term is a "new estate . . . clear of all rights, interests or licenses granted under the original copyright." *G. Ricordi & Co. v. Paramount Pictures, Inc.*, 189 F.2d 469, 471 (2d Cir. 1951). This Court has recognized "a presumption against the conveyance of renewal rights." *PC Films Corp. v. MGM/UA Home Video Inc.*, 138 F.3d 453, 457 (2d Cir. 1998).

Section 507(b) of the Copyright Act states: "No civil action shall be maintained under the provisions of this title unless it is commenced within

three years after the claim accrued." 17 U.S.C. § 507(b). The three-year limitations period applies to ownership claims. *Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 316 (2d Cir. 2013). A copyright ownership claim "accrues only once, when 'a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right.'" *Kwan v. Schlein*, 634 F.3d 224, 228 (2d Cir. 2011) (quoting *Stone v. Williams*, 970 F.2d 1043, 1048 (2d Cir. 1992)). This Court has identified at least three types of events that can put a potential plaintiff on notice and thereby trigger the accrual of an ownership claim: public repudiation; private repudiation in communications between the parties; and implicit repudiation "by conspicuously exploiting the copyright without paying royalties." *Friedrich*, 716 F.3d at 317.

The district court dismissed Plaintiffs' claims of a renewal term beginning in 2001 because Plaintiffs were on notice that, during the 1970s, Defendants had repudiated Plaintiffs' ownership of the original term copyrights, and "[t]his state of affairs persisted past the start of the renewal term in 2001 . . . ." *Wilson*, 2017 WL 1330336 at *5. The court based this finding on the following facts. The record label for the 1973 commercial release credited Defendants as publisher of the musical composition and as copyright

owner for the sound recording. Defendants registered copyrights in the sound recording and musical composition in 1973 and 1974, respectively, identifying Defendant UMG's predecessor (Polydor) as "Employer for Hire" as to the sound recording. Finally, Plaintiffs received neither royalties from Defendants nor even a partial accounting of royalties. The district court concluded that Defendants repudiated Plaintiffs' ownership of the original term copyrights "starting in 1973 and/or 1974. . . . And defendants' conduct in the ensuing decades continued to put plaintiffs on notice, including into the renewal term of the recording and composition that began in 2001." *Wilson*, 2017 WL 1330336 at *5. We respectfully disagree.

This Court considered a similar issue in *Friedrich*. There, the Defendant, Marvel Characters, Inc., argued that it had repudiated a comic creator's ownership of the renewal term copyright by placing a notice on the comic's initial 1972 publication that identified Marvel as the copyright owner. *Friedrich*, 716 F.3d at 317-18. We concluded that, "in 1972, the notice would have only indicated that Marvel held the rights to the initial term copyright. It would not have conclusively demonstrated that Marvel was the author or

otherwise had the right to register the renewal term." *Friedrich*, 716 F.3d at 318.

Here, the copyright notice on the 1973 record label and Defendants' 1974 copyright registration occurred during the original term. Construing the facts alleged in the complaint most favorably to Plaintiffs, as required on a motion attacking the sufficiency of the complaint, those acts, while they may have repudiated Plaintiffs' claim to the initial terms, did not repudiate Plaintiffs' ownership of the renewal terms. If Plaintiffs were the authors of the Sho' Nuff composition and sound recording, as alleged, they were entitled under § 304 to the renewal terms regardless of whether they abandoned their rights to the initial terms, and the renewal terms vested automatically with them. Nor does the lack of royalty payments during the original terms support a finding that Defendants repudiated Plaintiffs' ownership of the renewal term copyrights. As we explained in *Friedrich*, failure to pay royalties during the original terms "is irrelevant, as it would be merely consistent" with the assignment of the initial copyright terms. 716 F.3d at 318, n.15.

In support of the district court's ruling, Defendants rely on Defendant UMG's 2001 registration of a renewal term copyright *in the sound recording*,

and the sampling of the Sho' Nuff recording without paying royalties, which began on or about January 15, 2013. Neither fact supports a finding that this action is time-barred. At least in these circumstances, UMG's registration of the renewal term with the Copyright Office did not amount to a repudiation of the Plaintiffs' claim triggering their obligation to bring suit. If mere registration of a copyright without more sufficed to trigger the accrual of an ownership claim, then rightful owners would be forced to maintain constant vigil over new registrations. Such a requirement would be vastly more burdensome than the obligations that "a reasonably diligent plaintiff" would undertake. *Kwan*, 634 F.3d at 228 (internal citation and quotation marks omitted). Authors would regularly lose their rights merely by virtue of failing to monitor. The mere fact of UMG's 2001 registration did not cause Plaintiffs' claims to accrue.

As to the sampling of Sho' Nuff without paying Plaintiffs royalties, allegedly this did not begin until on or about January 15, 2013. This action, commenced on January 6, 2016, is untimely if Plaintiffs' claim to the renewal term copyrights accrued prior to January 6, 2013. The sampling thus occurred within the three-year statute of limitations.

The absence of royalty payments during the renewal terms does not show repudiation because there is no indication that Plaintiffs were entitled to royalties prior to January 6, 2013, much less that they would have known of such entitlement. *See Friedrich*, 716 F.3d at 318-19 (observing that failure to pay royalties must be sufficiently obvious to put "a reasonably diligent person" on notice in order to imply repudiation).

The June 26, 1973 registration of the Sho' Nuff sound recording by UMG's predecessor calls for some further discussion. That registration asserted a claim as "Employer for Hire." A repudiation of the Plaintiffs' initial term copyright claim in the sound recording by asserting ownership *as a work for hire* would effectively repudiate Plaintiffs' claim for the renewal term, as well as for the initial term. That is because, under § 304, in the case of works created (in the relevant time period) for an "employer for whom such work is made for hire," the employer for hire becomes effectively the author and owns not only the initial term, but also the renewal term. 17 U.S.C. § 304(a)(1)(B) ("In the case of . . . any work copyrighted . . . by an employer for whom such work is made for hire, the proprietor of such copyright shall be

entitled to a renewal and extension of the copyright in such work for the further term of 67 years.").

Nonetheless, as explained above, the mere act of registering an adverse claim in the Copyright Office was not an effective repudiation. An author is not under a duty to constantly monitor filings in the Copyright Office on pain of losing her copyright. Construing the facts alleged in the light most favorable to the Plaintiffs, the Plaintiffs did not have reasonable notice that Defendants had filed a registration *in the capacity of employer for hire*. At least to the extent revealed in the Amended Complaint, Defendants did not call to Plaintiffs' attention that the registration of the sound recording claimed it was a work for hire.[2] The registration thus did not constitute an effective repudiation, triggering an obligation on Plaintiffs to bring suit, so as to protect their copyright. In any event, that work for hire registration by UMG's predecessor covered only the sound recording. It would not have repudiated the Plaintiffs' claimed ownership of a copyright in the renewal term for the musical composition.

---

[2] We do not preclude the possibility that Defendants might win partial summary judgment with respect to the sound recording based on the proposition that UMG's predecessor, by listing itself as copyright owner on the record label, put "a reasonably diligent plaintiff" on notice to check the Copyright Office registration, *Kwan*, 634 F.3d at 228, which would have revealed that UMG's predecessor had listed itself as "Employer for Hire."

## II. Accounting Claims

Plaintiffs are also appealing from the dismissal of their New York law claims for an accounting covering three years prior to the filing of the Complaint and an award of revenues collected by Defendants from the commercial exploitation of Sho' Nuff during that period. The district court dismissed the claim for an accounting on two bases: first, that it was untimely, and second, that Plaintiffs had failed to allege that they were the beneficiaries of a fiduciary duty owed by the Defendants, which, under New York law, is an essential prerequisite to a claim for an accounting. *See Kosowsky v. Willard Mtn., Inc.*, 90 A.D.3d 1127, 1132 (N.Y. App. Div. 3d Dept. 2011) ("[P]laintiffs' cause of action seeking an accounting required factual allegations or evidence of a fiduciary relationship . . . .") (internal quotations and citations omitted); *Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Pub. Co.*, 306 N.Y.S. 2d 599, 601 (N.Y. App. Div. 1st Dept. 1969) (concluding that an author-publisher relationship can be "a purely commercial relationship" where "no fiduciary relationship exists").

To the extent the accounting claim was dismissed on grounds of untimeliness, that was error for the same reasons explained above in connection with the copyright claims.

To the extent, however, that the dismissal was based on the failure of the Amended Complaint to allege a fiduciary duty, we find no error. Our affirmance of the dismissal of the claim for an accounting does not bar Plaintiffs from employing discovery to learn of revenues collected by Defendants on account of Sho' Nuff in which Plaintiffs were entitled to share and seeking an award of their entitlements if they prevail in their copyright claims.

We have considered Defendants' remaining arguments and find them to be without merit. Accordingly, we vacate the district court's dismissal of Plaintiffs' claims seeking a declaratory judgment that they own the renewal term copyright in the Sho' Nuff musical composition and co-own the renewal term copyright in the Sho' Nuff sound recording, and we remand for further proceedings.

CONCLUSION

The judgment of the district court is hereby AFFIRMED as to its dismissal of the demand for an accounting and is otherwise VACATED. The case is REMANDED for further proceedings consistent with this opinion.